## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

CONSOLIDATED INDUSTRIES, LLC         )
d/b/a WEATHER KING PORTABLE          )
BUILDINGS,                           )
                                     )
      Plaintiff,                     )
                                     )   Civil Action No. 23 MC 113 SPM
v.                                   )
                                     )
JESSE A. MAUPIN, BARRY D.            )
HARRELL, ADRIAN S. HARROD,           )   W.D. Tenn. No. 1:22-cv-01230
LOGAN C. FEAGIN, STEPHANIE L.        )
GILLESPIE, RYAN E. BROWN, DANIEL     )
J. HERSHBERGER, BRIAN L. LASSEN,     )
ALEYNA LASSEN, and AMERICAN          )
BARN CO., LLC,                       )
                                     )
      Defendants.                    )

## PLAINTIFF'S MOTION TO COMPEL

Pursuant to Fed. R. Civ. P. 45(d)(2)(B)(i), Plaintiff Consolidated Industries, LLC, d/b/a
Weather King moves to compel JADE Rentals, LLC ("JADE"), a non-party, to comply with its
subpoena duces tecum served on February 13, 2023. In support of this motion, Plaintiff has filed
herewith a memorandum of law, as well as the following exhibits:

1. Plaintiff's subpoena to JADE, filed as Exhibit 1;

2. June 30, 2023, Order entered by the Western District of Tennessee, filed as Exhibit 2;

3. August 29, 2023, Order entered by the Western District of Tennessee, filed as Exhibit 3;

4. August 8, 2023, letter from JADE's counsel, filed as Exhibit 4;

5. August 22, 2023, letter from Plaintiff's counsel, filed as Exhibit 5;

6. September 8, 2023, letter from JADE's counsel, filed as Exhibit 6; and

7. Defendant American Barn Co., LLC's Fourth Supplemental discovery responses, filed as Exhibit 7.

Respectfully submitted,

BUTLER SNOW LLP

*/s/ David L. Johnson*
David L. Johnson (*pro hac vice* application
Forthcoming)
150 3rd Avenue South, Suite 1600
Nashville, TN 37201
(615) 651-6700
david.johnson@butlersnow.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that, on December 4, 2023, I served the foregoing on the following:

Via Email and U.S. Mail:

Thomas G. Pasternak
Benjamin S. Morrell
Taft Stettinius & Hollister LLP
111 E. South Wacker Drive, Suite 2600
Chicago, IL 60601-4208
Telephone: (312) 527-4000
Fax: (312) 527-4011
TPasternak@taftlaw.com
bmorrell@taftlaw.com
(Counsel for Defendants)

Via U.S. Mail and Facsimile:

Douglas E. Hines
Poplar Street Professional Building
317 East Poplar Street, Suite A
P.O. Box 369
Harrisburg, IL 62946
Telephone: (618) 253-3233
Fax: (618) 252-1103
(Counsel for JADE Rentals, LLC)

*/s/ David L. Johnson*
David L. Johnson

84792089.v1

2

# EXHIBIT 1

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Western District of Tennessee

| | |
|---|---|
| Consolidated Industries, LLC d/b/a Weather King | ) |
| *Plaintiff* | ) |
| v. | ) |
| Jesse A. Maupin, et al. | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.  1:22-cv-01230-STA-jay

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Jade Rentals, LLC, Custodian of Records c/o Douglas E. Hines, 317 E Poplar St., Ste A, Harrisburg, IL 62946

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached exhibits

| Place: Butler Snow LLP, 150 3rd Avenue South, Suite 1600, Nashville, TN 37201, john.dollarhide@butlersnow.com | Date and Time: 02/24/2023 12:49 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | /s/ John H. Dollarhide |
| Signature of Clerk or Deputy Clerk | | Attorney's signature |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Consolidated Industries, LLC d/b/a Weather King Portable Buildings _____, who issues or requests this subpoena, are:

John H. Dollarhide, 150 3rd Ave. S, Ste. 1600, Nashville, TN 37201, john.dollarhide@butlersnow.com, 615-651-6700

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.   **1:22-CV-01230-STA-JAY**

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for  Jade Rentals, LLC
was recieved by me on  2/05/2023:

☐  I personally served the summons on the individual at *(place)*  on *(date)* ; or

☐  I left the summons at the individual's residence or usual place of abode with *(name)* , a person of suitable age and
discretion who resides there, on , and mailed a copy to the individual's last known address; or

☒  I served the summons on **Douglas E. Hines**, who is designated by law to accept service of process on behalf of **Jade Rentals, LLC** 02/13/2023; or

☐  I returned the summons unexecuted because ; or

☐  Other *(specify)*

My fees are $ 0 for travel and $ 85.00 for services, for a total of $ 85.00.

I declare under penalty of perjury that this information is true.

Date:  02/13/2023

_____
Server's signature

**John Paul Beam**
Printed name and title

**502 S BENTLEY ST
MARION, IL 62959**

_____
Server's address

Additional information regarding attempted service, etc:

**I delivered the documents to Douglas E. Hines, REGISTERED AGENT with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a gray-haired white male contact 55-65 years of age, 5'10"-6'0" tall and weighing 180-200 lbs with glasses.**





Tracking #: 0101072930

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
        (i) is a party or a party's officer; or
        (ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
    (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
    (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
        (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
        (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
    (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
        (i) fails to allow a reasonable time to comply;
        (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
        (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
        (iv) subjects a person to undue burden.
    (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
        (i) disclosing a trade secret or other confidential research, development, or commercial information; or

        (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
        (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
        (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
    (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
        (i) expressly make the claim; and
        (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT A

## EXHIBIT A

### Definitions

1.      "You" or "your" refers to Jade Rentals, LLC, together with its parents, subsidiaries, predecessors, successors and affiliates, and its members, principals, officers, employees, agents, attorneys, and other representatives.

2.      "Document(s)," shall be read in its broadest possible sense and in accordance with the use of the term in Rules 26 and 34 of the Federal Rules of Civil Procedure. The term shall include handwritten, typewritten, printed, photocopied, photographic, electronic or recorded information. For purposes of illustration only, the term shall include: correspondence, e-mails, transcripts of testimony, letters, notes, reports, papers, files, books, records, contracts, agreements, telegrams, teletypes, and other communications sent or received; diaries, calendars, logs, notes, or memoranda of telephonic or face-to-face conversations; drafts, work papers, agendas, bulletins, notices, circulars, announcements, instructions, schedules, minutes, summaries, notes, and other records of obligations and expenditures; canceled checks, vouchers, receipts, and other records of payments, ledgers, journals, balance sheets, profit and loss statements, and other sources of financial data; analyses, statements, interviews, affidavits, printed matter (including published books, articles, speeches, and newspaper clippings), press releases, charts, drawings, specifications, manuals, brochures, and memoranda of all kinds to and from any persons, agencies, or entities.

3.      "Communication" means any utterance or written notation, or written or verbal statement of any nature whatsoever, *including but not limited to text messages and emails*, by and to whomsoever made, including, but not limited to, conversations, dialogues, discussions, interviews, consultations, negotiations, correspondence, agreements, and other understandings between or among two or more persons.

4.      The terms "relate to," "related to," "relating to," "regarding," "relevant," and "relevance" are intended as objective, rather than subjective, terms and, when used with regard to a document or communication, the meaning of these terms includes, but is not limited to, whether such document or communication regards, records, summarizes, makes mention of, concerns, regulates, constitutes, evidences the existence of, or otherwise refers to any subject or event out of which this action arose or about which the request for production probes.

5.      "Lawsuit" means this legal action in the United States District Court for the Western District of Tennessee, styled as *Consolidated Industries, LLC d/b/a Weather King Portable Buildings v. Jesse A. Maupin et al.*, No. 1:22-cv-1230 (W.D. Tenn.), a copy of the Amended Complaint of which is attached as Exhibit B.

6.      "Weather King" refers to Consolidated Industries, LLC d/b/a/ Weather King Portable Buildings, its parents, subsidiaries, successors and affiliates, and its directors, officers, employees, agents, attorneys, and other representatives.

7.      "Weather King Affiliates" refers to businesses under common ownership with or closely associated with Consolidated Industries, LLC d/b/a/ Weather King Portable Buildings, including without limitation PMB Rentals, LLC, PMB Services, Inc., PMB Investment Group, LLC, PMB Leasing, LLC, RTO Rentals, LLC, Sheds 365, LLC, Sheds 365 Sales, LLC, Shed Properties USA LLC, Heartland Rentals, LLC, Merison's LLC, USA Rentals, LLC, Cruzin Chrome, LLC, and Street Dynamics USA, LLC

8.      "Defendant[s]" refers to Jesse A. Maupin, Barry D. Harrell, Adrian S. Harrod, Logan C. Feagin, Stephanie L. Gillespie, Ryan E. Brown, Daniel J. Hershberger, Bryan L. Lassen, Aleyna Lassen, and American Barn Co., LLC, along with their employees, attorneys and other agents/representatives.

9.      "ABCO" refers to American Barn Co., LLC, ABCO Rentals, LLC, their parents, subsidiaries, successors and affiliates, and their directors, officers, employees, agents, attorneys, and other representatives.

### Requests

1.      All communications between you and any of the Defendants from October 1, 2021, to the present.

2.      All documents exchanged between you and any of the Defendants from October 1, 2021, to the present.

3.      All communications and other documents exchanged between you and any third party from October 1, 2021, to the present related to:

(a) any of the Defendants or ABCO;
(b) the Lawsuit;
(c) any claims or potential claims made by Weather King against the Defendants;
(d) the Defendants' or your possession of or use of any Weather King property, including but not limited to Weather King's financial information;
(e) derogatory remarks made by any of the Defendants relating to Weather King;
(h) potential ownership interest in investment in, funding to, or lending to any of the Defendants, ABCO Rentals, LLC, or any other affiliate of American Barn Co., LLC;
(i) the formation of ABCO; or
(j) any loans, investments, or capital contributions to ABCO or any of the Defendants.

4.      All documents relating to your ownership in, investment in, funding to, or lending to any of the Defendants or ABCO.

5.      All documents relating to your potential ownership in, investment in, funding to, or lending to any of the Defendants or ABCO.

2

6. All documents relating to your possession of or use of any Weather King property (including but not limited to financial information).

7. All documents relating to any of the Defendants' use of any Weather King property (including but not limited to financial information).

8. All phone records or voicemails related to or evidencing calls (whether completed or not) between you and any Defendant from October 1, 2021, to the present.

9. All communications and other documents related to any agreements or potential agreements made by you and any of the Defendants or ABCO.

10. All documents and communications related to your decision to do business with ABCO.

11. All communications and other documents exchanged between you and any third party not associated with Weather King or any Weather King Affiliate (other than end users/customers of Weather King products) from October 1, 2021, to the present regarding Weather King or any Weather King Affiliate.

67496877.v1

3

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| CONSOLIDATED INDUSTRIES, LLC<br>d/b/a WEATHER KING PORTABLE<br>BUILDINGS, | ) <br> ) <br> ) <br> ) | |
|     Plaintiff, | ) <br> ) | Civil Action No. 1:22-cv-01230-STA-jay |
| v. | ) <br> ) | Chief Judge S. Thomas Anderson |
| JESSE A. MAUPIN, BARRY D.<br>HARRELL, ADRIAN S. HARROD,<br>LOGAN C. FEAGIN, STEPHANIE L.<br>GILLESPIE, RYAN E. BROWN, DANIEL<br>J. HERSHBERGER, BRIAN L. LASSEN,<br>ALEYNA LASSEN, and AMERICAN<br>BARN CO., LLC, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
|     Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Consolidated Industries, LLC, d/b/a Weather King Portable Buildings ("Weather King"), for its First Amended Complaint, states as follows.

## PRELIMINARY STATEMENT

With the benefit of trade secrets that Defendant Jesse Maupin misappropriated from Weather King, Defendants Maupin, Harrod, Harrell, Feagin, Gillespie, Brown, Hershberger, Brian Lassen, and Aleyna Lassen (hereinafter "the Individual Defendants")—while still employed by Plaintiff—acted in concert to form a competing business enterprise. The Defendants' carefully orchestrated endeavor was designed to squeeze Weather King out of its Western United States market, including by shutting down production, soliciting other employees to resign and work for the new company, and converting sales opportunities, all through the use of stolen information and

misrepresentations. Weather King seeks monetary damages for the serious harm that Defendants have caused through their unlawful actions.

**PARTIES**

1.      Plaintiff is a limited liability company organized under the laws of the Commonwealth of Kentucky, with its principal place of business located in Paris, Henry County, Tennessee.

2.      Upon information and belief, Defendant Jesse A. Maupin is an individual who resides at 8139 State Route 121 S., Murray, KY 42071.

3.      Upon information and belief, Defendant Adrian S Harrod is an individual who resides at 55 Nalonna Dr., Paris, TN 38242

4.      Upon information and belief, Defendant Logan C Feagin is an individual who resides at 1131 Beech Grove Rd, Farmington, KY 42040.

5.      Upon information and belief, Defendant Barry D. Harrell, is an individual who resides at 3582 Old Newburg Rd., Murray, KY 42071.

6.      Upon information and belief, Defendant Stephanie L. Gillespie is an individual who resides at 1308 E. Blythe St., Paris, TN 38242.

7.      Upon information and belief, Defendant Ryan E. Brown is an individual who resides at 105 Doris Ct., Grants, NM 87020.

8.      Upon information and belief, Defendant Daniel J. Hershberger is an individual who resides at 551 North Jackson, Wickenburg, AZ 85390.

9.      Upon information and belief, Defendant Brian L. Lassen is an individual who resides at 1405 N. Fort Grant Road, Willcox, AZ 85643.

2

10.     Upon information and belief, Defendant Aleyna Lassen is an individual who resides at 1405 N. Fort Grant Road, Willcox, AZ 85643.

11.     Upon information and belief, Defendant American Barn Co, LLC ("American Barn") is a limited liability company organized under the laws of the Commonwealth of Kentucky, with a registered agent listed as Virgil W. Etherton, 860 Cloverdale Trail, Murray, Kentucky 42071.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331(a) and 1367(a) and 18 U.S.C. § 1836(c).

13.     The Court has personal jurisdiction over all Defendants under Fed. R. Civ. P. 4(k)(1)(A), Tenn. Code Ann. §§ 20-2-222(1) and 20-2-223(a), and Tennessee's conspiracy jurisdiction doctrine. Defendants Maupin, Harrod, Feagin, Harrell, and Gillespie (two of whom are Tennessee residents) have engaged in unlawful conduct within the State of Tennessee as alleged herein, including while working from Weather King's headquarters in Henry County, Tennessee. All Defendants engaged in the conspiracy as further alleged below.

14.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), 28 U.S.C. § 123(c)(1), and Local Rule 3.3(b)(2) because two Defendants reside in this district, because Defendants' conduct occurred in part in Henry County, Tennessee, because the injury-causing effects occurred in Henry County, and because the causes of action arose in Henry County.

## FACTUAL ALLEGATIONS

## BACKGROUND

15.     Based in Paris, Tennessee, Weather King manufactures and sells portable buildings, including backyard sheds, garages, cabins, utility buildings and storage buildings. Prior

to the events giving rise to this action, those sales occurred across Arizona, New Mexico, Florida, West Texas, and Southern Colorado. Weather King owned six plants in those states, and it worked with independent contractors who operated plants in Kingman, Arizona, and Las Vegas, New Mexico, constructing buildings for Weather King.

16.     Weather King sold these buildings through dealer networks and physical sales lots throughout those states. Weather Kings sells its buildings for cash or rent-to-own. Weather King sells its rent-to-own contracts to different independent rental companies. In other words, Weather King provided dealers with inventory on consignment and then paid the dealers commissions for their sales. Weather King also maintained a network of independent contractor truck drivers.

17.     Weather King hired Defendant Maupin on February 1, 2010. Most recently, Mr. Maupin served as Western Region Sales Manager. In that highly-compensated position, Mr. Maupin oversaw Weather King's manufacturing plants and sales representatives in Arizona, New Mexico, Colorado, and Texas (hereinafter "the Western States"). Mr. Maupin was the face of the company in the Western States. Mr. Maupin reported to David Sullivan, Weather King's Manager.

18.     Weather King hired Defendant Harrod on March 4, 2015. Most recently, Mr. Harrod served as a Sales Representative assigned to Arizona and Colorado. Mr. Harrod reported to Mr. Maupin.

19.     Weather King hired Defendant Feagin on January 20, 2020. Most recently, Mr. Feagin served as a Sales Representative assigned to New Mexico and Texas. Mr. Feagin reported to Mr. Maupin.

20.     Weather King hired Defendant Harrell (who had worked for Weather King previously) on January 27, 2020. Most recently, Mr. Harrell served as a Sales Representative assigned to Florida. Mr. Harrell reported to Jay Coker, Regional Sales Manager for Florida.

4

Previously, Mr. Harrell served as a Sales Representative assigned to New Mexico and reported to Mr. Maupin.

21.    Weather King hired Defendant Gillespie on June 23, 2011. Ms. Gillespie worked from Weather King's Paris headquarters and helped process orders and payroll (and other tasks) for the Arizona and Colorado operations. Ms. Gillespie reported to Weather King's Controller, Jill Coker.

22.    Weather King hired Defendant Brown on August 31, 2020. Mr. Brown was the Plant Manager for Weather King's Milan, New Mexico manufacturing plant.

23.    Weather King hired Defendant Hershberger on November 1, 2015. Mr. Hershberger was the Plant Manager for Weather King's Peoria, Arizona manufacturing plant.

24.    Weather King hired Defendant Brian Lassen on June 13, 2016. Mr. Lassen was the Plant Manager for Weather King's Willcox, Arizona manufacturing plant.

25.    Weather King hired Defendant Aleyna Lassen on August 2, 2016. Mrs. Lassen was employed as an office worker in Weather King's Willcox, Arizona plant. Mrs. Lassen helped organize Arizona Barn Co., LLC ("Arizona Barn"), and serves as its manager, and she personally took part in the wrongful acts with respect to Arizona Barn discussed more fully below. Upon information and belief, Arizona Barn is affiliated with American Barn.

26.    Solely by virtue of their employment with Weather King, the Individual Defendants had the opportunity to develop relationships with Weather King's employees, dealers, drivers, end-use customers, suppliers, landlords, rental companies, and others with whom Weather King had a business relationship. The Individual Defendants' employment also enabled them to have access (some of which unauthorized) to certain of Weather King's trade secrets and other proprietary information related to its operations and business relationships.

5

## INDIVIDUAL DEFENDANTS' DEPARTURES

27.     On May 31, 2022, Defendant Gillespie abruptly resigned from Weather King effective immediately.

28.     The following day, June 1, 2022, Weather King's senior management learned of a text message that Defendant Harrod sent to certain of Weather King's dealers whose relationships Defendant Gillespie had been servicing. The text message read: "Hey guys Stephanie walked out today and quit WeatherKing the new girl Shelby don't say anything to regarding the future." A true and correct copy of a printout of Defendant Harrod's text message is filed as **Exhibit 1** to the original Complaint.

29.     That same day, Paul Mattson, an employee at Weather King's Peoria, Arizona plant notified Weather King personnel that he had been trying to contact Ms. Coker (Weather King's Controller) at the Weather King main office in Paris to discuss concerning matters, but that Defendant Gillespie intercepted his call and diverted him to Defendant Maupin, thus not allowing him to speak with Ms. Coker. Mr. Mattson reported that Defendants Maupin, Harrell, Harrod, and Feagin had formed a competing business. He also reported that several of them—along with Defendant Hershberger—had been having secret meetings at the Peoria plant in which they encouraged those employees to join the new business.

30.     Mr. Mattson also reported that Defendants' plan was for Mr. Hershberger to announce that he was resigning on June 15, 2022. Defendants planned that the remaining Peoria employees would then resign from Weather King and join Mr. Hershberger and the new business. Mr. Mattson further reported that Defendants planned to work from a temporary location in Peoria but that they would return to Weather King's Peoria plant after they had "squeezed out" Weather

King. In other words, Defendants' plan was to force Weather King to shutter operations at its Peoria plant and then their new business would gain a fully functioning manufacturing facility.

31.    Weather King later discovered that Defendants' competing business enterprise was formed as Defendant American Barn, which was registered with the Kentucky Secretary of State on February 23, 2022—*three months earlier.*

32.    Later on June 1, 2022, members of Weather King's ownership and management, including Mr. Sullivan, confronted Mr. Maupin. Mr. Maupin admitted that he and other Weather King personnel had formed American Barn. Mr. Maupin claimed that, because he was responsible for growing Weather King's business in the West, he "deserved" to take over in the Western States and that it was "owed" to him.

33.    At the conclusion of the conversation, Weather King's manager terminated Mr. Maupin's employment. At that time, Defendants Harrod, Feagin, and Harrell (along with Mitch Sykes, who handled repairs and warranty work for Weather King) were packing their belongings and leaving the Paris facility.

## CULMINATION OF DEFENDANTS' SCHEME TO STEAL AWAY WEATHER KING'S EMPLOYEES AND DEALERS AND DESTROY ITS WESTERN OPERATIONS

34.    In an elaborate smear campaign, the Individual Defendants poisoned Weather King's relationships with its dealers, employees, drivers, contract builders, and others by making false representations about Weather King, harming its reputation, and encouraging these persons and entities to cease doing business with Weather King and instead work for and with American Barn, Arizona Barn, and potentially other entities to compete with Weather King. The Individual Defendants' actions occurred in part while they were still employed by Weather King (and still owed a fiduciary duty to it).

7

35.     After speaking with Defendant Maupin on June 1, 2022, Mr. Sullivan attempted to contact the Western States plant managers. That afternoon, Defendant Hershberger (who managed Weather King's Peoria plant and who reported to Mr. Maupin) told Mr. Sullivan that he was quitting. The other plant managers refused to take Mr. Sullivan's calls.

36.     On June 2, 2022, Ryan Brown, manager of Weather King's Milan, New Mexico plant and who reported to Mr. Maupin, notified Weather King that he and the 13 other employees at the plant had quit and joined American Barn. Mr. Brown later told Weather King that he would only ensure that existing work orders were completed if Weather King signed the plant lease over to American Barn.

37.     That same day, Weather King personnel spoke with Brian Lassen, who managed Weather King's Willcox, Arizona plant and who reported to Mr. Maupin. He stated that he and the other employees at the Willcox plant had quit and joined American Barn. During the conversation, he stated that the original plan was for him and others to quit on June 20, 2022, but that their plan had been hastened by Weather King's discovery of the intercepted phone call from the Peoria plant on June 1, 2022.

38.     On June 2, 2022, Weather King received a call from Freddie Rodriguez, an employee at the Willcox plant. He refuted Mr. Lassen's claim that all of the Willcox employees had resigned. Rather, Mr. Lassen told them that they were all fired. Mr. Rodriguez indicated that the remaining employees had joined Mr. Lassen at American Barn, but that he would remain with Weather King.

39.     On or about June 2, 2022, Kerry Ratzlaff, a contract-based plant operator in Las Vegas, New Mexico, also notified Weather King that he and all of his personnel (consisting of

approximately 7-10 workers) were ending their relationship with Weather King and instead would be constructing portable buildings for American Barn.

40.    On June 9, 2022, Mr. Lassen told Weather King personnel that its dealers and drivers would soon be notifying Weather King that they would be severing their business relationships with Weather King. Mr. Lassen also stated that American Barn would temporarily build products at its new location in Willcox until they "ran out" Weather King, at which point they would take over the Willcox plant lease.

41.    On June 9, 2022—more than a week after the termination of their employment— Defendants Maupin and Harrod trespassed at Weather King's Peoria, Arizona facility and conducted a meeting with one of Weather King's drivers.

42.    Consistent with Defendants' admission of deliberate malice, numerous independent dealers and drivers with whom Weather King had business relationships notified Weather King that they were ceasing their business relationship and instead moving their business to American Barn. Several indicated that American Barn agents told them that American Barn is taking over Plaintiff's Western operations and suggested that Weather King would not have any money to pay them if they continued to do business with Weather King (who would, without the infrastructure for revenue, not be able to generate sufficient revenue to pay them).

43.    Dealers also advised customers to cancel their existing orders for Weather King buildings and to instead order from American Barn. Upon information and belief, these dealers took these actions with Defendants' encouragement.

44.    Defendants have unlawfully harmed Weather King's business relationships, resulting in significant financial damages. Through their carefully orchestrated scheme in blatant and egregious violation of their duty of loyalty to Weather King, the Individual Defendants

9

ambushed Weather King by falsely souring relationships with employees, dealers, and contactors, converting the distribution-channel infrastructure Weather King had in place, and then encouraging Weather King's employees, dealers, and contractors to switch to American Barn.

45.     The following chart (which does not include the independent contractor plants in Las Vegas, NM, and Kingman, AZ) demonstrates the immediate and significant effect of Defendants' actions on Weather King's workforce and ability to operate in the Western States markets:

| Facility | # of Employees as of 5/31/22 | # of Employees as of 6/2/22 |
|----------|------------------------------|-----------------------------|
| Milan, NM | 14 | 0 |
| Willcox, AZ | 14 | 1 |
| Peoria, AZ | 15 | 9 |
| Paris, TN | 20 | 13 |
| **Total** | 63 | 23 |

46.     Weather King suffered further attrition thereafter.  As a result of Defendants' wrongful conduct, Weather King has suffered a devastating reduction in sales in its Western States markets and was placed in the untenable position of trying to salvage its Western States operations.

### WEATHER KING'S DISCOVERY OF OTHER OVERT ACTS

47.     During an inspection of Weather King's work computers that the Individual Defendants used during their employment, Weather King discovered that much of the data on the Individual Defendants' work computers had been deleted and, upon information and belief, that Defendant Harrell intentionally crashed his hard drive. Weather King, however, was able to retrieve certain pertinent information.

48.     On January 31, 2022, Defendant Maupin emailed to himself a photograph of Weather King's inventory count for each of its states. On March 4, 2022, Mr. Maupin emailed to himself photographs of Weather King's profit & loss statement and balance sheet.   This information is confidential, proprietary, and trade secret. Mr. Maupin did not have authorized access to that information, nor did he need that information in performing his duties for Weather King. The photos reveal that Mr. Maupin covertly entered a Weather King officer's workstation, opened a sealed envelope with a Weather King officer's name on it, took the photos surreptitiously, put the financial statements back in the envelope, and then later emailed himself the information. Defendant Maupin misappropriated these trade secrets for the purpose of securing funding to launch American Barn and Arizona Barn, as well as a rental company that, and to otherwise carry out Defendants' scheme.

49.     A search of Mr. Maupin's Weather King computer revealed additional egregious acts. Weather King rented a sales lot at 1755 N. Broad Street in Globe, Arizona, from James and Sharon Kowalzyk on a year-by-year basis. Weather King learned that on April 7, 2022—after American Barn was formed but while Maupin was still a Weather King employee—the Kowalzyks signed a new lease on the same property with the tenant listed as "Jesse Maupin" and with his personal home address listed. A true and correct copy of the instrument is filed as **Exhibit 2** to the original Complaint. In doing so, Mr. Maupin deceptively and unlawfully took advantage of his employment with Weather King (including through the use of Weather King's property) by diverting this lease arrangement to himself and American Barn.

50.     Weather King also discovered from Mr. Maupin's work computer that on March 29, 2022— after American Barn was formed but while Maupin was still a Weather King employee—Maupin executed a lease with Horizon Properties, Ltd. for rental property in Grants,

11

New Mexico, purportedly on Weather King's behalf, but at a monthly rental rate of $100 more per month than Weather King was previously paying. A true and correct copy of the instrument is filed as **Exhibit 3** to the original Complaint. Mr. Maupin never had the authority to sign leases for Weather King, and he signed this lease without knowledge or permission and without notifying Weather King of any rent increase. Mr. Maupin surreptitiously committed Weather King to this artificially inflated lease so that Weather King would unknowingly default by underpaying, which would enable American Barn to take over the leasehold interest.

51.     Weather King also discovered from Mr. Maupin's work computer a draft lease with a date of May 15, 2022, listing a lessee as "Arizona Barn Co., LLC" with respect to real property in Willcox, Arizona, less than a mile from Weather King's Willcox plant. A copy of the document is filed as **Exhibit 4** to the original Complaint. Defendants have used that property for their competing business enterprise.

52.     Information from the Arizona Corporate Commission website filed as **Exhibit 5** to the original Complaint demonstrates that, on February 16, 2022, an entity known as "Sonoran Sheds LLC" was organized in Arizona with Mr. Hershberger named as organizer and member.

53.     Information from the Arizona Corporate Commission website filed as **Exhibit 6** to the original Complaint demonstrates that, on June 6, 2022, an entity known as "Arizona Barn Co., LLC" was organized in Arizona with listed members that include Mr. Maupin, Mr. Lassen, and Mrs. Lassen, who also was employed by Weather King until quitting at the beginning of June 2022. Mrs. Lassen is listed as Arizona Barn's manager with a "Date of Taking Office" of "4/27/2022"—more than a month before her resignation.

12

54.     Weather King also discovered instances in which the Individual Defendants, while still employed by Weather King, surreptitiously took Weather King template contracts for use by American Barn and Arizona Barn.

55.     Attempting to mitigate the harm, Weather King, through counsel, issued many of the Individual Defendants cease-and-desist/preservation letters filed as **Exhibit 7** to the original Complaint.

56.     After receiving his letter, Defendant Harrell contacted one of Weather King's dealers in Florida and suggested to the dealer that the dealer should demand a higher commission from Weather King. Other dealers in Florida have also contacted Weather King and requested to be paid higher percentages, leading to a reasonable inference that Defendant Harrell contacted them as well. Defendant Harrell's efforts to intentionally disrupt Weather King's business in Florida is also evidenced by Harrell sending emails to Weather King's Florida dealers with images of Florida sales lots with American Barn banners and suggesting "this could be you" if the dealer switched to American Barn.

57.     Weather King also learned that Defendant Maupin convinced Ben Miller (who managed one of Weather King's manufacturing plants in Florida but who was temporarily assigned to the Willcox, Arizona plant to keep it running) to move from Florida to Arizona and work for American Barn/Arizona Barn. Mr. Miller reported to Weather King that, as part of his solicitation, Mr. Maupin falsely told Mr. Miller that Weather King intended to replace him.

58.     In August 2022, Defendants effected a change in the Caller ID name for outbound calls from Weather King's toll-free telephone number so that all outbound calls from Weather King would appear as "Jesse Maupin" on the recipient's Caller ID.  This was not authorized and is false and misleading. This is additional evidence of unfair competition, in addition to being a

criminal violation of the Truth in Caller ID Act, 47 U.S.C. § 227(e), for which a complaint has been filed with the Federal Communications Commission.

59.     Many jurisdictions require owners of certain portable buildings to obtain a building permit. Those jurisdictions typically require a permit applicant to submit building plans/drawings prepared by an appropriately licensed engineer in connection with the application. Certain jurisdictions also require builders and sellers of portable buildings to have pre-approved engineering plans before units are built. Therefore, it is not feasible for a company to manufacture and sell portable buildings in jurisdictions such as New Mexico and Arizona without plans from a licensed engineer.

60.     Weather King retained and paid Kevin Nolan, P.E., a duly-licensed engineer, to prepare plans related to Weather King's portable buildings.

61.     At least as of late November 2022, Defendants have not had engineering plans of their own.

62.     Upon information and belief, after his termination from Weather King, Mr. Maupin retained copies of certain of Weather King's engineering plans prepared by Mr. Nolan.

63.     Because American Barn has not had its own plans, American Barn and its network of dealers have coordinated with their customers to submit Weather King's engineering plans in connection with building permit applications even though the customers purchased American Barn units and not Weather King units. Weather King did not authorize American Barn or its customers to use Weather King's plans. Through their actions, American Barn and Maupin have unfairly traded off and profited from Weather King's proprietary building plans.

### COUNT I: MISAPPROPRIATION OF TRADE SECRETS UNDER 18 U.S.C. § 1836 (AGAINST DEFENDANTS MAUPIN AND AMERICAN BARN)

64.     Weather King incorporates by reference its preceding allegations.

14

65.    As alleged above, Weather King's business constitutes interstate commerce.

66.    During their employment with Weather King, each of the Individual Defendants had certain access to Weather King's "trade secrets" as that term is defined by 18 U.S.C. § 1839(3).

67.    Defendant Maupin misappropriated Weather King's trade secrets, including but not necessarily limited to disclosing and using Weather King's confidential financial information as detailed in Paragraph 48 above, as well as Weather King's engineering plans.

68.    Maupin did so while acting as agent of American Barn and for American Barn's benefit and with its encouragement.

69.    Defendants Maupin and American Barn acted willfully and maliciously and with improper means.

70.    Weather King has been damaged as a direct and proximate result of these Defendants' unlawful conduct, and the harm from these acts continues despite mitigation efforts.

### COUNT II: MISAPPROPRIATION OF TRADE SECRETS UNDER TENN. CODE § 47-25-1704 (AGAINST DEFENDANTS MAUPIN AND AMERICAN BARN)

71.    Weather King incorporates by reference its preceding allegations.

72.    During their employment with Weather King, each of the Individual Defendants had certain access to Weather King's "trade secrets" as that term is defined by T.C.A. § 47-25-1702(4).

73.    Defendant Maupin misappropriated Weather King's trade secrets, including but not necessarily limited to disclosing and using Weather King's confidential financial information as detailed in Paragraph 48 above, as well as Weather King's engineering plans.

74.    Maupin did so while acting as agent of American Barn and for American Barn's benefit and with its encouragement.

15

75.   Defendants Maupin and American Barn acted willfully and maliciously and with improper means.

76.   Weather King has been damaged as a direct and proximate result of these Defendants' unlawful conduct, and the harm from these acts continues despite mitigation efforts.

## COUNT III: BREACH OF DUTY OF LOYALTY (AGAINST THE INDIVIDUAL DEFENDANTS)

77.   Weather King incorporates by reference its preceding allegations.

78.   During their employment with Weather King, each of the Individual Defendants owed Weather King a duty of loyalty to "act solely for the benefit of the employer in matters within the scope of his [or her] employment" and not to "engage in conduct that is adverse to the employer's interests." *Efird v. Clinic of Plastic & Reconstructive Surgery, P.A.*, 147 S.W.3d 208, 219 (Tenn. Ct. App. 2003).

79.   The Individual Defendants with management positions (Maupin, Brown, Brian Lassen, and Herschberger) owed a heightened duty of loyalty to Weather King.

80.   Each of the Individual Defendants breached their duty of loyalty by acting, both individually and in concert, to further their own personal interests and that of American Barn / Arizona Barn during their employment (and during work hours and using Plaintiff's resources) to Weather King's detriment.

81.   Weather King has been damaged as a direct and proximate result of these Defendants' breach of their duty of loyalty, it will continue to be harmed, and it continues to face irreparable harm.

## COUNT IV: INTERFERENCE WITH BUSINESS RELATIONSHIPS (AGAINST ALL DEFENDANTS)

82.   Weather King incorporates by reference its preceding allegations.

83.     Weather King has had numerous business relationships, including but not limited
to with dealers, employees, contractors, drivers, customers, vendors, landlords, rental companies,
and others within the industry.

84.     Defendants were aware of those relationships.

85.     Defendants interfered with Weather King's business relationships with the intent
to terminate or otherwise disrupt and harm Weather King's relationships with those persons and
entities.

86.     Defendants have acted both with an improper motive and an improper means.

87.     Weather King has been damaged as a direct and proximate result of these
Defendants' unlawful conduct, and the harm from these acts continues despite mitigation efforts.

## COUNT V: DEFAMATION (AGAINST DEFENDANTS MAUPIN, BRIAN LASSEN, AND AMERICAN BARN)

88.     Weather King incorporates by reference its preceding allegations.

89.     Defendants Maupin, Brian Lassen, and American Barn through its agents have
made false and defamatory statements about Weather King to third parties, including but not
limited to dealers, drivers, and independent contractors with whom it has had business
relationships. The statements include, but are not limited to, suggesting that Weather King will be
unable to pay its bills and that it will be going out of business in the Western States.

90.     These Defendants acted intentionally and/or recklessly and with the malicious
intent of convincing these parties to do business with American Barn rather than Weather King.

91.     Weather King has been damaged as a direct and proximate result of these
Defendants' unlawful conduct, and the harm from these acts continues despite mitigation efforts.

## COUNT VI: CONVERSION (AGAINST ALL DEFENDANTS)

92.     Weather King incorporates by reference its preceding allegations.

93.     Each of the Defendants wrongfully appropriated Weather King's property, including proprietary business information and revenue from building sales as well as Weather King's engineering plans, for their own use and benefit, exercising dominion and control over such property in defiance of Weather King's rights.

94.     Weather King has been damaged as a direct and proximate result of the Defendants' unlawful conduct, and the harm from these acts continues despite mitigation efforts.

### COUNT VII: UNJUST ENRICHMENT (AGAINST ALL DEFENDANTS)

95.     Weather King incorporates by reference its preceding allegations.

96.     Defendants availed themselves of the benefit of Weather King's engineering plans by making use of them, including allowing American Barn customers to use Weather King's engineering plans in connection with permit applications for American Barn portable buildings.

97.     Through the misuse of Weather King's plans, American Barn has unfairly obtained revenue from the sale of portable buildings.  This revenue has been used to enrich American Barn in the form of sales receipts and to enrich the Individual Defendants in the forms of distributions, bonuses, salaries, or other remuneration.

98.     American Barn did not compensate Weather King for the use of Weather King's plans, nor did it obtain Weather King's approval.

99.     It would be unjust and inequitable for Defendants to retain the respective benefits they have received from the misuse of Weather King's plans without payment of the value and profits they have derived from the plans.

### COUNT VIII: CIVIL CONSPIRACY (AGAINST ALL DEFENDANTS)

100.    Weather King incorporates by reference its preceding allegations.

101.    Each of the Defendants have acted collectively with a common design.

18

102.   Each of the Defendants took concerted action to achieve multiple unlawful purposes.

103.   As set forth above, overt acts were taken in furtherance of Defendants' conspiracy, with many of those actions being taken in Henry County, Tennessee.

104.   Weather King has been damaged as a direct and proximate result of the Defendants' unlawful conduct, and the harm from these acts continues despite mitigation efforts.

### COUNT IX: AIDING AND ABETTING (AGAINST ALL DEFENDANTS)

105.   Weather King incorporates by reference its preceding allegations.

106.   Each of the Defendants knew that one or more of the other Defendants were breaching their duties owed to Plaintiff.

107.   Each of the Defendants gave substantial assistance and/or encouragement to one or more of the other Defendants in harming Weather King.

108.   Each of the Defendants engaged in affirmative conduct in furtherance of Defendants' unlawful activities against Weather King.

109.   Weather King has been damaged as a direct and proximate result of the Defendants' unlawful conduct, and the harm from these acts continues despite mitigation efforts.

**WHEREFORE**, Weather King respectfully requests that this Court:

1.   Enter a judgment in favor of Weather King against Defendants for compensatory damages as a result of Defendants' wrongful conduct.

2.   Enter a judgment in favor of Weather King against the Individual Defendants requiring the Individual Defendants to disgorge the salary and other compensation that they were paid by Weather King during the time that they were breaching their duty of loyalty and requiring Defendants to disgorge the profits that they have garnered as a result of their unlawful acts.

19

3.    Enter a judgment in favor of Weather King against Defendants Maupin and American Barn for damages, including exemplary damages, under 18 U.S.C. § 1836(b)(3) and T.C.A. § 47-25-1704.

4.    Enter a judgment in favor of Weather King against all Defendants for the profits, distributions, salaries, bonuses, and other value derived from the misuse of Weather King's engineering plans.

5.    Enter a judgment in favor of Weather King against Defendants for punitive damages as a result of Defendants' willful, malicious, and/or reckless misconduct.

6.    Award Weather King its attorney's fees in accordance with 18 U.S.C. § 1836(b)(3)(D) and T.C.A. § 47-25-1705.

7.    Award Weather King such other relief to which it is entitled under the law.

BUTLER SNOW LLP

*/s/  David L. Johnson*
David L. Johnson, #18732
John H. Dollarhide, #40041
Y. Larry Cheng, #36707
150 3rd Avenue South, Suite 1600
Nashville, TN 37201
Telephone: (615) 651-6700
Fax:  (615) 651-6701
david.johnson@butlersnow.com
john.dollarhide@butlersnow.com
larry.cheng@butlersnow.com

Daniel W. Van Horn, #18940
6075 Poplar Ave., Suite 500
Memphis, TN 38119
Telephone: (901) 680-7200
Fax: (901) 680-7201
Danny.VanHorn@butlersnow.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2023, I filed the foregoing, First Amended Complaint with the Court using the ECF system, which will provide notice and a copy to counsel of record:

Thomas G. Pasternak
AKERMAN LLP
71 South Wacker Drive, 47th Floor
Chicago, IL 60606
Tel. 312.634.5700
thomas.pasternak@akerman.com
Attorneys for Defendants

/s/ David L. Johnson
David L. Johnson

66645821.v2

21

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

CONSOLIDATED INDUSTRIES, LLC
d/b/a WEATHER KING
PORTABLE BUILDINGS

      Plaintiff,

v.                              No. 1:22-cv-01230-STA-jay

JESSE A. MAUPIN, et al.

      Defendants.

---

**ORDER DENYING MOTIONS FOR PROTECTIVE ORDER**

---

      Before the Court are two Motions. The first is Defendants' Motion for Protective Order. ECF No. 33. The second is a Motion for Protective Order filed by non-parties BPS, LLC and Troy Buttrey. ECF No. 36. These Motions were referred to the undersigned for determination. ECF No. 37. The Court held a telephonic hearing on May 22, 2023; all parties were present. ECF No. 74. Based on the parties' representations at the hearing and the following analysis, Defendants' Motion for Protective Order [ECF No. 33] is **DENIED**, and the Non-Parties' Motion for Protective Order [ECF No. 36] is **DENIED WITHOUT PREJUDICE.**

**I.     MOTIONS FOR PROTECTIVE ORDER**

      The named Defendants in this case move the Court to issue a Protective Order pursuant to Federal Rule of Civil Procedure 26(c)(1) in response to Plaintiff having served subpoenas on over thirty non-parties. ECF No. 33-1 at 2-3; ECF No. 33 at 1. Defendants included a copy of one of the subpoenas as an Exhibit. ECF No. 33-2. The production requests included items such as "[a]ll

1

communications," "[a]ll documents exchanged," and "[a]ll phone records or voicemails" between the non-parties and Defendants from a period as early as January 2021 to the present. ECF No. 33-2 at 2-3. Some of the more specific items sought related to financing documents, loans, and property possession. ECF No. 33-2 at ¶¶ 6, 8, 12.

Defendants make two arguments. First, they claim the "subpoenas are overbroad and place an undue burden on the third parties." ECF No. 33-1 at 6. Second, they state the "subpoenas may have a harmful impact on Defendants' customer relations." ECF No. 33-1 at 6. Non-parties—BPS, LLC and Troy Buttrey—also filed a Motion for a Protective Order. ECF No. 36. They argue that "[t]he subpoenas are extremely overbroad on their faces" and amount to an undue burden. ECF No. 36 at 1.

Plaintiff's Response to Defendant's Motion raises two primary arguments. First, that "Defendants lack standing to bring their motion" on behalf of third parties. ECF No. 61 at 1. Second, that Defendants have "fallen short of meeting their burden of proving that they are entitled to the requested relief." ECF No. 61 at 1. As to the non-parties' Motion, Plaintiff argues that they have "not met [their] burden of demonstrating proper grounds to prevent [Plaintiff] from obtaining the requested information . . . ." ECF No. 65 at 1.

Defendants filed a Reply to Plaintiff's Response. ECF No. 67. They rebut Plaintiff's argument on standing by highlighting that the Motion for Protective Order was brought pursuant to Rule 26(c)(1) and that standing is an issue generally raised pursuant to motions to quash subpoenas under Federal Rule of Civil Procedure 45. ECF No. 67 at 1. As to whether Defendants met their burden in showing an undue burden or expense, Defendants argue that they are not required to "reach out to some [thirty] parties and determine each of their costs of compliance in order to establish good cause for a protective order here." ECF No. 67 at 2.

## II.    PROTECTIVE ORDER LEGAL STANDARDS

The starting point for these Motions is the relevant discovery standard. Federal Rule of Civil Procedure 26(b) provides that the scope of discovery includes any "nonprivileged matter that is relevant to any party's claim or defense" so long as it is "proportional to the needs of the case" in light of several factors. FED. R. CIV. P. 26(b)(1).

The Federal Rules provide that "for good cause" a court may issue a protective order to limit discovery in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." FED. R. CIV. P. 26(c)(1). A party seeking a protective order must illustrate "with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements" one of the "enumerated harms" provided for in Rule 26(c)(1). *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012) (internal quotations omitted); *see also In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016). The party seeking the protective order must show a "specific prejudice or harm [that] will result." *In re Ohio Execution Protocol Litig.*, 845 F.3d at 236 (internal quotations omitted). The burden of establishing good cause rests with the moving party. *Nix v. Sword*, 11 Fed. Appx. 498, 500 (6th Cir. 2001).

As to the issue of standing, there are different standards that govern whether a party may move on behalf of a non-party to modify the scope of a subpoena. Federal Rule of Civil Procedure 45(d)(3) provides that a court *must* quash a subpoena under certain circumstances and that a court *may* quash a subpoena under other circumstances. Fed. R. Civ. P. 45(d)(3)(A)-(B). What is true regarding any motion to quash is that the party bringing the motion must have standing to do so. This means that a party bringing a motion to quash a subpoena served on a non-party must establish that they have a claim of privilege, proprietary interest, or personal interest in order to proceed. *Bridgestone Americas, Inc. v. Int'l Bus. Mach. Corp.*, No. 3:13-cv-1196, 2016 WL 11786198, at

3

*5 (M.D. Tenn. May 16, 2016); *White Mule Co. v. ATC Leasing Co. LLC*, No. 07CV00057, 2008 WL 2680273, at *4, (N.D. Ohio June 25, 2008).

However, no such personal interest is required where a party seeks a protective order on behalf of a third party when the motion is brought pursuant to Rule 26(c)(1). *White Mule Co.*, No. 07CV00057, 2008 WL 2680273, at *4 (citing *U.S. v. Operation Rescue*, 112 F. Supp. 2d 696, 705 (S.D. Ohio Mar. 10, 1999)). The Rule's own language provides for such a reading as it "does not contain commas after 'party' and 'sought' . . . ." *Schweinfurth v. Motorola, Inc.*, No. 1:05CV024, 2008 WL 4981380, at *2 (N.D. Ohio Nov. 19, 2008). Instead, the Rule simply provides that "[a] party or any person from whom discovery is sought may move for a protective order" from the court. FED. R. CIV. P. 26(c)(1).

Regardless of who will be protected, under Rule 26 the movant must establish that the subpoena will "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" in order to justify such an order. FED. R. CIV. P. 26(c)(1).

### A. Defendants' Motion for Protective Order

First, the Court finds that Defendants have standing to move for a protective order because they are "a party" per the language of the Rule they invoke. FED. R. CIV. P. 26(c)(1). However, the Court finds that Defendants did not carry their burden in establishing with any level of specificity that the third parties that Plaintiff subpoenaed will suffer "from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). Defendants argue that these subpoenas amount to an undue burden because the sought-after documentation is: (1) voluminous, (2) tangentially relevant, and (3) spans "several years." ECF No. 33-1 at 6. This, according to Defendants, shows that Plaintiff is "embarking on a fishing expedition at the expense of the nonparties." ECF No. 33-1 at 6.

4

The Court disagrees. First, the documents and communications sought are not so voluminous as to be an undue burden. The Court notes that Plaintiff limited the scope of requested documentation and copies of communications both in time (approximately twenty-nine months) and party (named individuals or corporate entities). Many of these documents and logs of communication are likely readily accessible digitally. Moreover, at the hearing regarding these Motions, Plaintiff's counsel assured the Court it was ready, willing, and able to discuss with third-parties a more tailored production schedule to account for any burdens the third parties may bear.[1]

Defendant's argument regarding the subpoenas and impact on Defendants' customer relations is equally unpersuasive. Courts in this Circuit have granted protective orders in light of the embarrassment a corporate entity may face where customers are the targets of subpoenas. *Thogus Prods. Co. v. Bleep, LLC*, No. 1:20cv1887, 2021 WL 827003, at *6-7 (N.D. Ohio March 4, 2021). However, in these cases the moving party clearly provided that the contested subpoenas were, in essence, a ruse. In *Thogus Prods. Co.*, the court found that the subpoenas were really meant to alert a customer base about the pending litigation. *Id.* This finding was, in part, based on the observation that much of the material sought from the customer base was available from the defendant "through the normal course of discovery." *Id.* at *6.

Here, there is no indication that Plaintiff seeks to harass or annoy Defendants' entire customer base. Nor is there any indication that Plaintiff is attempting to embarrass Defendants by simply using discovery as a means to alert various customers about the pending litigation. More

---

[1] It appears Plaintiff and non-parties, BPS, LLC and Troy Buttrey, have already embarked upon such mutually agreeable negotiations regarding the scope of these subpoenas such that they are producing the documentation Plaintiff seeks.

to the point, at the telephonic hearing, the undersigned inquired as to whether Plaintiff had first sought these documents and copies of communications from Defendants themselves. According to Defendants' counsel, they have *no record* of any of the sought-after documentation or communication. As such, it appears these non-parties are the only source from which Plaintiff may obtain this discoverable information. Simply invoking the issue of customer relations is insufficient to find good cause for issuing a protective order in this matter.

**B. Non-parties' Motion for Protective Order**

At the telephonic hearing on May 22, 2023, counsel for non-parties BPS, LLC and Troy Buttrey informed the Court they are conferring in good faith about the scope of the subpoenas and the timing of responses to the subpoenas. They advised the Court that they wish to withdraw their Motion for Protective Order, ECF No. 36. As such, the Motion is DENIED WITHOUT PREJUDICE.

### III.   CONCLUSION

For the foregoing reasons, Defendants' Motions for Protective Order [ECF No. 33] is **DENIED**, and the Non-Parties' Motion for Protective Order [ECF No. 36] is **DENIED WITHOUT PREJUDICE.**

IT IS SO ORDERED this the 30th day of June, 2023.

s/Jon A. York
UNITED STATES MAGISTRATE JUDGE

IF DESIRED, AN APPEAL OF THIS ORDER TO THE PRESIDING DISTRICT COURT JUDGE MUST BE FILED WITHIN FOURTEEN (14) DAYS OF THE SERVICE OF A COPY OF THIS ORDER. *SEE* 28 U.S.C. § 636(b)(1)(C); LOCAL RULE 72(g)(2); FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.

6

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

CONSOLIDATED INDUSTRIES, LLC
d/b/a WEATHER KING
PORTABLE BUILDINGS

      Plaintiff,

v.                                                         No. 1:22-cv-01230-STA-jay

MAUPIN, et al.

      Defendants.

---

**ORDER**

---

Before the Court are four Motions. Plaintiff filed a Motion to Compel Forensic Examination, a Motion to Compel Discovery Supplementation, and a Motion for Sanctions. ECF Nos. 73, 75, 91. Defendants filed Responses in opposition to each. ECF Nos. 81, 83, 99. Plaintiff filed Replies to the Motion to Compel Discovery and the Motion for Sanctions. ECF Nos. 90, 104. The fourth filing is a Motion to Compel supplementation filed by Defendants. ECF No. 86. Plaintiff filed a Response in opposition. ECF No. 92. These Motions were referred to the undersigned for determination. ECF Nos. 76, 93. The Court DENIES WITHOUT PREJUDICE Plaintiff's Motion to Compel Forensic Examination, GRANTS Plaintiff's Motion to Compel Discovery Supplementation in part, DENIES Defendant's Motion to Compel supplementation, and DENIES WITHOUT PREJUDICE Plaintiff's Motion for Sanctions.

**I. LEGAL STANDARDS**

The starting point for the Motions to Compel is Federal Rule of Civil Procedure 37(a). That

1

Rule states, "a party may move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a). Such a motion may be brought if "a party fails to answer an interrogatory submitted under Rule 33" or "a party fails to produce documents . . . as requested under Rule 34." FED. R. CIV. P. 37(a)(3)(B)(iii)-(iv). According to the Federal Rules, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4).

Federal Rule of Civil Procedure 26(b) provides that the scope of discovery includes any "nonprivileged matter that is relevant to any party's claim or defense" so long as it is "proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). The "operative test" is "whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence." *Conti*, 326 Fed. Appx. at 904 (internal quotations omitted). The scope of discovery is limited to "the claims and defenses asserted in the pleadings, and . . . parties . . . have no entitlement to discovery to develop new claims or defenses that are not already identified . . . ." *Ewert v. Holzer Clinic, Inc.*, No. 2:09-CV-131, 2010 U.S. Dist. LEXIS 149498, at* 11 (S.D. Ohio June 17, 2010) (quoting FED. R. CIV. P. 26(b)(1) advisory committee's note to 2000 amendment).

Rules 33 and 34 of the Federal Rules of Civil Procedure require more than "boilerplate objections" to discovery requests. *Jones v. Am. River Transp. Co.*, 2020 U.S. Dist. LEXIS 246007 at *5 (W.D. Tenn. 2020) (internal citations omitted). In short, merely uttering "undue burden" or "overly broad" will not suffice as an actual objection as these terms are not "self-proving." *Neale v. Coloplast Corp.*, 2020 U.S. Dist. LEXIS 222505 at *5 (E.D. Tenn. 2020) (internal citations omitted).

As to the issue of compelling a forensic examination of electronic devices, the Federal Rules provide "[s]pecific [l]imitations on [e]lectronically [s]tored [i]nformation." FED. R. CIV. P. 26(b)(2)(B). Those limitations state that a "party need not provide discovery of electronically

2

stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." FED. R. CIV. P. 26(b)(2)(B). The Sixth Circuit has provided the following considerations for compelling forensic examination, given the "significant privacy and confidentiality concerns" with access to electronic data. *John B. v. Goetz*, 531 F.3d 448, 460 (6th Cir. 2008). The first consideration is caution: if the request is "unduly vague or unsubstantiated in nature" or too "broad in nature" given the nexus between the electronic devices and the claims raised, the court should deny the forensic analysis request. *John B.*, 531 F.3d at 459-60 (internal quotations omitted). Second, "mere skepticism that an opposing party has not produced all relevant information is not sufficient to warrant drastic electronic discovery measures." *Id.* at 460. Finally, a court "must consider the significant interests implicated by forensic imaging before ordering such procedures." *Id.*

As to the issue of sanctions, Federal Rule of Civil Procedure 37 allows a party to recover attorney fees if a motion to compel disclosure or discovery is granted. FED. R. CIV. P. 37(a)(5)(A). However, courts "must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(a)(5)(A).

## II. PLAINTIFF'S MOTION TO COMPEL FORENSIC EXAMINATION

Plaintiff's first Motion requests that the Court compel the nine named individual Defendants to produce their cell phones and computers "for forensic examination and imaging." ECF No. 73 at 1.[1] According to Plaintiff, "Defendants have not produced highly-relevant

---

[1] Of note, the Court previously denied Defendants' Motion for a Protective Order. ECF No. 96 at 1. In that Motion,

documents requested in discovery and that a forensics examination is necessary" to obtain those documents and information. ECF No. 73 at 1. Plaintiff first served a litigation hold on Defendants, and later served interrogatories and requests for production. ECF No. 73-1 at 3-4.

However, Defendants' responses were, in a word, lacking. Plaintiff requested supplementation, which Defendants responded to with statements such as "[w]e are not required to give you an explanation of the facts as they are," or "[o]ne can't compel that which doesn't exist." ECF No. 73-1 at 4; ECF No. 73-11 at 3, 5.

After serving subpoenas on third parties, Plaintiff was able to obtain some of the documentation it originally sought from Defendants. These documents included text message conversations and emails. ECF No.73-6; ECF No. 73-7; EF No. 73-9. Plaintiff posits the only explanation for Defendants continued refusal to produce documents and respond adequately to interrogatories is that they "either: (a) have these (and other) records and have not produced them in contravention of their discovery obligations and their representations in their discovery responses; or (b) have spoliated evidence." ECF No. 73-1 at 7. Plaintiff therefore argues a forensic examination is warranted to "resolve the inconsistency in Defendants' responses and, if the responsive documents have indeed been destroyed, to determine the timing and circumstances in which they were destroyed." ECF No. 73-1 at 7. Included in Plaintiff's Motion is a fifteen-part protocol that is "designed to balance all parties' interests . . . ." ECF No. 73-1 at 7.

Defendants' Response argues five points. ECF No. 81. First, they have produced all

---

Defendants sought to prevent the production of documents, phone records, voicemails, and other communications between Defendants and third parties. ECF No. 96 at 2. As the Court noted in that Order, during a telephonic hearing, Defense counsel indicated they have "*no record* of any of the sought-after documentation or communication" which bolstered Plaintiff's argument that third-party production was necessary. ECF No. 96 at 6 (emphasis added).

documents within their possession. ECF No. 81 at 1. Second, Plaintiff's request ignores risks to Defendants' "privacy and confidentiality . . . ." ECF No. 81 at 1. Third, Plaintiff's accusations that Defendants have not met their discovery obligations are based on "mere suspicion" which is insufficient to compel forensic examination. ECF No. 81 at 1. Fourth, Defendants claim the protocol is "not appropriate." ECF No. 81 at 1. Finally, they argue costs should be allocated to Plaintiff or a party to be determined at a later date. ECF No. 81 at 1.

At the hearing regarding these Motions, the Court noted that because it will compel Defendants to supplement their responses to Plaintiff's interrogatories and requests for production, it will not order forensic examination at this time. Therefore, Plaintiff's Motion to Compel Forensic Examination is DENIED WITHOUT PREJUDICE.

### III. PLAINTIFF'S MOTION TO COMPEL DISCOVERY SUPPLEMENTATION

Shortly after filing the Motion regarding forensic examination, Plaintiff filed a Motion to Compel Discovery Supplementation. ECF No. 75. Defendants filed a Response in opposition. ECF No. 83. The Court granted Plaintiff leave to file a Reply, which it filed. ECF Nos. 85, 89, 90.

Plaintiff's Motion to Compel Discovery Supplementation highlights that despite serving requests for supplementation, Defendants' responses "remain inadequate." ECF No. 75-1 at 2. The Motion organizes the discovery issues into twelve categories: (A) identification of phone numbers, email accounts, and other information; (B) requests for phone records; (C) identification of devices; (D) identification of pertinent communications with Weather King's business relationships and identification of pertinent relationships; (E) information relating to funding sources and potential funding sources; (F) compensation information; (G) information relating to appointments, etc.; (H) pertinent recordings; (I) Defendant Harrell's interference with Florida dealers; (J) engineer contact information; (K) spreadsheet referenced in email; and (L) recipients

of a text message sent from Defendant Harrod. ECF No. 75-1 at 3-20.

Plaintiff, broadly, complains that Defendants have either provided vague and evasive responses, no response at all, responses that contradict other discovery, or responses that are fabrications. ECF No. 75-1 at 8, 18; ECF No. 90 at 3, 5, 10. Defendants generally challenge the discovery requests as either being unduly burdensome, irrelevant, or not proportional to the needs of the case. ECF No. 83 at 1, 4-5. Defendants also respond that some of the interrogatories Plaintiff identifies as being vague or evasive are answered to the best of the party's ability. Additionally, some of the documents, emails, or files requested simply no longer exist. ECF No. 83 at 10-12, 14-15.[2]

### A. Identification of Phone Numbers, Email Accounts, and Other Information

The Court finds that Plaintiff's request for identification of Defendants' "email accounts, cell phone numbers (and providers), messaging services, Google drive accounts, Dropbox accounts, and any other cloud-based account" that Defendants used between January 1, 2022, and present is not unduly burdensome, overly broad, or disproportionate to the needs of the case. ECF No. 75-1 at 3. As such, Plaintiff's Motion to Compel supplementation as to this interrogatory is GRANTED.

### B. Requests for Phone Records

The Court finds that Plaintiff's request for Defendants' "phone records from January 1, 2022, through July 1, 2022" is not unduly burdensome, overly broad, or disproportionate to the needs of the case. ECF No. 75-1 at 5. As such, Plaintiff's Motion to Compel supplementation as

---

[2] There was also a discrepancy between the parties regarding who owned the various electronic devices used by Defendants during their employment with Plaintiff. That discrepancy has been resolved. The Court therefore understands that Defendants may no longer assert that they do not possess the devices that may contain this discoverable information because those devices were returned to Plaintiff. ECF No. 83 at 10; ECF No. 90.

to this request for production is GRANTED. Defendants may redact personal calls but must include the date of the redacted call and the recipient of the call.

### C. Identification of Devices

The Court finds that Plaintiff's request for Defendants to "identify each device in your possession, custody, or control, including but not limited to laptop computers, desktop computers, cell phones (including number and provider), tablets, or other portable electronic or storage devices that contains or contained any information that refers to, relates to, or was created by Weather King" is not unduly burdensome, overly broad, or disproportionate to the needs of the case. ECF No. 75-1 at 6-7. Plaintiff's Motion to Compel supplementation as to this interrogatory is GRANTED.

### D. Identification of Pertinent Communications with Weather King's Business Relationship and Identification of Pertinent Relationships

The Court finds that Plaintiff's request that Defendant ABCO "identify all Weather King employees, independent contractors, dealers, and rental businesses who were approached about leaving Weather King and joining Defendants' competing business enterprise" is not unduly burdensome, overly broad, or disproportionate to the needs of the case. ECF No. 75-1 at 7. The same finding is true as to Plaintiff's request that Defendant ABCO "identify its employees who were formerly employed by Weather King, all ABCO independent contractors who have been affiliated with Weather King, and all ABCO dealers who were former Weather King dealers." ECF No. 75-1 at 8. The Court therefore GRANTS Plaintiff's Motion to Compel supplementation as to these interrogatories propounded on Defendant ABCO.

Several individual Defendants were served with similar interrogatories and requests for production. The Court finds that these requests fall within the bounds of permissible discovery. As

7

such, the Court GRANTS Plaintiff's Motion to Compel supplementation as to the following individual Defendants: Defendant Maupin (Interrogatories No. 3, 4, 5); Defendant Hershberger (Interrogatories No. 4, 5 and Requests for Production No. 6, 7, 14); Defendant Feagin (Interrogatory No. 4).

### E. Information Relating to Funding Sources and Potential Funding Sources

The Court finds that Plaintiff's request to identify "each person and/or entity with whom [Defendants] have discussed funding, potential funding, or providing other financial support to or for any business enterprise in the Portable Building Industry since January 1, 2021, whether as an investor, a lender, or in any other capacity" is not unduly burdensome, overly broad, or disproportionate to the needs of the case. ECF No. 75-1 at 14. The Court GRANTS Plaintiff's Motion to Compel Defendant Maupin to supplement his response to this interrogatory.

The same finding is true regarding Plaintiff's interrogatories and requests for production propounded on Defendant ABCO. ECF No. 75-1 at 14-15. Therefore, the Court GRANTS Plaintiff's Motion to Compel supplementation. Defendant ABCO is ORDERED to supplement its responses to Interrogatories No. 3, 4 and Request for Production 32.

Plaintiff's Interrogatory No. 3 propounded on Defendant Harrell is likewise well within the scope of discoverable information that is not unduly burdensome, overly broad, or disproportionate. ECF No. 75-1 at 15. As such, the Court GRANTS Plaintiff's Motion to Compel supplementation of Defendant Harrell's response to this interrogatory.

### F. Compensation Information

The Court also finds that Plaintiff's request for production regarding "documents evidencing distributions, salary, wages, bonuses, commissions, or other compensation paid or accrued to [Defendants] by any entity in the Portable Buildings Industry, other than Weather King

8

from January 1, 2021, through the date of response" is not unduly burdensome, overly broad, or disproportionate to the needs of the case. ECF No. 75-1 at 16. Plaintiff's Motion to Compel supplementation is GRANTED.

### G. Information Relating to Appointments, Etc.

Plaintiff further requested production of "[a]ll documents reflecting notes, diaries, journals, expense records, day planners, calendars, and/or other record(s) maintained by [Defendants] that record, refer, or otherwise relate to your activities, including, but not limited to any appointment, meeting, interview, placement or other business activities in the Portable Buildings Industry from January 1, 2022, through July 1, 2022." ECF No. 75-1 at 17. The Court finds this request within the scope of discovery. Plaintiff's Motion to Compel supplementation from Defendant ABCO and Defendant Harrell as to this request is GRANTED.

### H. Pertinent Recordings

The parties informed the Court that this request for production from Defendant Feagin is resolved. As such, the Court will DENY this request as MOOT.

### I. Defendant Harrell's Interference with Florida Dealers

Plaintiff's request that Defendant Harrell "[i]dentify all then-current Weather King dealers to whom [Defendant] suggested should demand a higher commission from Weather King" is not unduly burdensome, overly broad, or disproportionate to the needs of the case. As such, the Court GRANTS Plaintiff's Motion to Compel supplementation. ECF No. 75-1 at 18.

### J. Engineer Contact Information

The parties informed the Court that this request for production from Defendant ABCO is now resolved. As such, the Court will DENY this request as MOOT.

### K. Spreadsheet Referenced in Email

9

The parties informed the Court that this request for production from Defendant Brown is now resolved. As such, the Court will DENY this request as moot.

**L. Recipients of Text Message Sent from Defendant Harrod**

The Court finds that Plaintiff's request that Defendant Harrod "identify all persons who were recipients of the test message" sent by Defendant Harrod on June 1, 2022, is not unduly broad, overly burdensome, or disproportionate to the needs of this case. ECF No. 75-1 at 18 (internal quotations omitted). As such Plaintiff's Motion to Compel supplementation as to this interrogatory is GRANTED.

## IV. DEFENDANT'S MOTION TO COMPEL

Defendants also filed a Motion to Compel Plaintiff for Further Responses to their First Set of Interrogatories and First Set of Requests for Production of Documents. ECF No. 86. Plaintiff filed a Response in opposition. ECF No. 92. The Motion itemizes requests Defendants made related to pay raises, a PPP loan, derogatory statements, complaints made to the Department of Labor, issues of videotaping at a Florida location, safety protocols, and Plaintiff's COVID response. ECF No. 86 at 2-6. Defendants complain that Plaintiff's objections to these discovery requests are "boiler plate objections" that warrant the Court's intervention. ECF No. 86 at 7.

Plaintiff challenges Defendants' requests on the issue of relevance. ECF No. 92 at 1. Noting that Defendants have raised no counterclaims and only three affirmative defenses, Plaintiff argues that because the sought-after information appears to center around unasserted counter-claims the information is irrelevant to any claim or defense "actually asserted." ECF No. 92 at 1-3. At the hearing held on August 24, 2023. Defendants argued that the information sought through these discovery requests will aid in presenting the context as to why Defendants may have left their employment at Weather King or help illuminate justifications for their actions. The Court agrees

10

with Plaintiff's argument on this point: Defense counsel has not presented, nor is the Court aware of, any legal merit to the notion that because an employer has upset or treated employees unfairly those employees are justified in breaching their duty of loyalty or stealing trade secrets.

Defendants request the Court compel Plaintiff to supplement their responses to the following interrogatories: Interrogatories Nos. 4, 5, 12, 24, 27, 28, 29, 30, 31, 32, 33, 34, and 36. ECF No. 86 at 1. Defendants further request the Court compel Plaintiff to supplement its production as to the following requests for production: Document Requests Nos. 9, 13, 14, 15, 16, 17, and 18. ECF No. 86 at 1. The Court finds, at this point in time, these interrogatories and requests for production are either not relevant to the issues presented in this case or disproportionate to the needs of case. As such, the Court DENIES WITHOUT PREJUDICE Defendants' Motion to Compel. However, if through the course of litigation these requests become relevant or proportionate, Defense counsel may re-file a motion to compel responses to these requests if there is a good faith basis.

### V. PLAINTIFF'S MOTION FOR SANCTIONS

On June 21, 2023, Plaintiff filed a Motion for Sanctions. ECF No. 91. Plaintiff argues the following: Defendants made misrepresentations before the Court; have not "attempt[ed] to justify their failure to produce clearly discoverable information;" have "provided evasive and incomplete discovery responses;" and have raised unmeritorious objections to Plaintiff's requests. ECF No. 91 at 1-5. In particular, Plaintiff notes that some of the information it sought from Defendants (that Defendants asserted they did not have or did not remember) has been subsequently produced by third parties. ECF No. 91 at 4-5. Plaintiff argues that sanctions are warranted because of the time and expense incurred resolving these discovery disputes. ECF No. 91 at 5.

In their Response, Defendants argue that only a "small percentage" of the nearly "1200

11

discovery requests" are in dispute. ECF No. 99 at 1-2. According to Defendants, this represents a "good faith effort[]" on Defendants' part to comply with their discovery obligations. ECF No. 99 at 2. Defendants then go on to inform the Court that they made a "mistake of fact" regarding one of the main points of contention: *who owned the electronic devices Defendants used while employed by Plaintiff*. ECF No. 99 at 2. Defendants state that after they submitted their Response to Plaintiff's Motion to Compel, "Defendants' counsel learned that Defendants did not have company phones or laptops that were turned in." ECF No. 99 at 3. This, apparently, was based on a "miscommunication" that Defendants choose not to explain. ECF No. 99 at 3. Defendants go on to argue, as before, that they have "[a]dequately [r]esponded" to Plaintiff's requests and Motions, they "[h]ave [n]ot [b]een [e]vasive" in their disclosures, and their "[r]esponses [h]ave [n]ot [b]een [p]roven [f]alse by . . . [e]xtrinsic [e]vidence." ECF No. 99 at 4-7. Finally, Defendants assert that some of the issues raised by Plaintiff are moot because Defendants have produced the sought-after documentation. ECF No. 99 at 5.

Plaintiff sought leave of Court to file a Reply, which the Court granted. ECF Nos. 101-102. The Reply again raises the issue of spoilation related to Defendants' apparent lack of documentation and the litigation hold letter Plaintiff served. ECF No. 104 at 3. Plaintiff includes Exhibits to point out further inconsistencies related to Defendants responses to questions about loans and the documentation provided by third parties. ECF No. 104 at 3-4; ECF No.104-2. Plaintiff notes that despite now recognizing the factual error regarding electronic device ownership, Defendants *still* failed to produce responsive documents, despite acknowledging the devices are (or were) within their custody. ECF No. 104 at 3-4. Finally, Plaintiff argues that none of the ultimate discovery issues are moot, and because Plaintiff had to go to such lengths to obtain discoverable information, sanctions are warranted. ECF No. 104 at 7.

12

At this time, the Court finds sanctions are not warranted. The Court accepts Defendants' assertions that they do not remember certain events, they may not understand the definition of some terms such as "financial support," or even that they may no longer possess some documents. However, Defendants are reminded of their discovery obligations, and that they are expected to fully comply with the Court's present Order to supplement their responses to Plaintiff's requests. As such, Plaintiff's Motion for Sanctions is DENIED WITHOUT PREJUDICE. Any further obfuscation on Defendants' part may result in sanctions, which could include judgment entered in Plaintiff's favor and/or a finding that hold Defendants are in contempt. FED. R. CIV. P. 37(b)(2)(A)(vi)-(vii).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion to Compel supplementation in part; DENIES WITHOUT PREJUDICE Plaintiff's Motion to Compel forensic examination; DENIES WITHOUT PREJUDICE Defendants' Motion to Compel supplementation; and DENIES WITHOUT PREJUDICE Plaintiff's Motion for Sanctions.

IT IS SO ORDERED this the 29th day of August, 2023.

s/Jon A. York
UNITED STATES MAGISTRATE JUDGE

**IF DESIRED, AN APPEAL OF THIS ORDER TO THE PRESIDING DISTRICT COURT JUDGE MUST BE FILED WITHIN FOURTEEN (14) DAYS OF THE SERVICE OF A COPY OF THIS ORDER. *SEE* 28 U.S.C. § 636(b)(1)(C); LOCAL RULE 72(g)(2). FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**

13

# EXHIBIT 4

THE LAW OFFICES
OF
DOUGLAS E. HINES, P.C.

Poplar Street Professional Building
317 East Poplar Street, Suite A
P.O. Box 369
Harrisburg, IL  62946
(618) 253-3233
(618) 252-1103 fax

August 8, 2023

Butler Snow LLP
Attn:  John H. Dollarhide
150 3rd Ave. South, Ste. 1600
Nashville, TN 37201

RE:  Consolidated Industries, LLC vs. Maupin, et al.
      - Subpoena to Produce Documents
      - JADE Rentals, LLC

Dear Mr. Dollarhide:

On August 3, 2023, I received your letter commanding that JADE Rentals, LLC, produce documents, electronically stored information or objects; however, JADE Rentals, LLC, objects to the Subpoena because the period of time that you are requesting information is not defined and is ambiguous (i.e "to the present"). I understand that you seek information beginning on October 21, 2021, and JADE Rentals, LLC, is fine with that. However, to put this in perspective, I, Douglas E. Hines, am the sole member of JADE Rentals, LLC, and on Thursday, November 11, 2021, I was initially diagnosed with throat cancer and a biopsy was taken. On Tuesday, November 16, 2021, the diagnoses was confirmed. Immediately after that I began preparation for treatments (meeting with doctors, CT scans, PET scans, having a port surgically implanted, dental exam, etc.). Because of this and the Thanksgiving holiday, I was in the office very little between November 16, 2021, and the middle of December 2021. After I began treatments in the middle of December 2021, until late May 2022, I was not in the office more than 2-3 times for only 15 to 20 minutes per visit; I was also not in any kind of condition to oversee or manage the operations of JADE Rentals, LLC, and no one else employed at JADE Rentals, LLC, had the authority to conduct any business that would have resulted in any information that you are commanding.

Furthermore, it is my understanding, and I did not personally look it up or cause anyone else to look it up, but the Kentucky Secretary of State records reflect that American Barn Co.,

LLC, was not formed until late February 2022, or early March 2022; therefore, JADE Rentals, LLC, could not have had any dealings with American Barn Co., LLC, prior to its formation.

Finally, it is my understanding that Weather King/Consolidated Industries, LLC, fired the individual defendants on June 1, 2022. I found out about the firing when David Sullivan called me early afternoon on June 1, 2022, and asked me if I was involved. At that time I advised David Sullivan that I was not involved and had no idea what had transpired. Therefore, since Weather King/Consolidated Industries, LLC, terminated the individual defendants on June 1, 2022, JADE Rentals, LLC, objects to the production of any documents, electronically stored information or objects after June 1, 2022.

If you would like to discuss this matter in greater detail, please feel free to contact me at your convenience. Thank you.

Respectfully,

Douglas E. Hines

F:\DOCS\LETTERS\WK vs Maupin - Butler Snow Subpoena.doc

# EXHIBIT 5

BUTLER|SNOW

August 22, 2023

JADE Rentals, LLC
c/o Douglas E. Hines
P.O. Box 369
Harrisburg, IL 62946

Re:   *Consolidated Industries, LLC d/b/a Weather King Portable Buildings v. Jesse A. Maupin, et al.*; United States District Court for the Western District of Tennessee, Eastern Division, No. 1:22-cv-01230-STA-jay

Dear Mr. Hines:

We are in receipt of your August 8 letter to my attention. In that letter, you raised three objections to the subpoena to JADE Rentals, LLC ("Jade"): (1) that phrase "to the present" is somehow ambiguous; (2) that Jade could not have had any dealings with American Barn Co., LLC ("ABCO") prior to its formation; and (3) that responsive documents dated after the individual Defendants' separation from Weather King will not be produced for reasons that are unclear. We address each argument in turn.

First, as you know, under Federal Rule of Civil Procedure 45(d)(2)(B), any objections to the subpoenas were required to be served within the earlier of the compliance date or 14 days after service. Your August 8 objections came many months too late for the protections of Rule 45(d)(2)(B)(i) and (ii) to apply to you. Accordingly, we take the position that you have waived those objections.

Even if the objections were not waived, each of them lacks merit. "To the present" means through the date of your response. Simply thinking logically, it is impossible for you to produce documents created *after* your production. If this is still confusing, consider the subpoena to ask you to produce responsive documents through the date of this letter.

Second, we realize that ABCO was not formed until early 2022. But the subpoena did not ask only for communications and documents with ABCO. Rather, the subpoena calls for the production of communications with "the Defendants," which include Jesse Maupin, Barry Harrell, Adrian Harrod, Logan Feagin, Stephanie Gillespie, Ryan Brown, Daniel Hershberger, Bryan Lassen, and Aleyna Lassen. These communications are within the scope of documents that are responsive to the subpoena and should be produced.

Third, you objected to producing responsive documents in your possession dated after June 1, 2022, on the basis of your "understanding" that Weather King terminated the individual Defendants on June 1, 2022. Your understanding is not accurate. But even if it was, there is no legal basis for refusing to produce responsive documents involving the Defendants after their

*The Pinnacle at Symphony Place*
*150 3rd Avenue South, Suite 1600*
*Nashville, TN 37201*

JOHN DOLLARHIDE
615.651.6782
John.Dollarhide@butlersnow.com

*T 615.651.6700*
*F 615.651.6701*
*www.butlersnow.com*

BUTLER SNOW LLP

.

respective separations from Weather King. In other words, and as an example, the broad scope of discovery in civil cases is such that communications you have had with the Defendants *after* June 1, 2022, about Weather King or about the lawsuit are relevant to Weather King's claims and are properly subject to the subpoena. Moreover, the court has already rejected the Defendants' challenge to the breadth of the subpoenas.

That said, Weather King is willing to narrow the scope of the requested documents to hasten the production of responsive documents. The narrowed scope would be as follows[1]:

1. All communications between you and any of the Defendants from October 1, 2021, through July 1, 2022.

2. All documents exchanged between you and any of the Defendants from October 1, 2021, through the date of your response.

3. All communications and other documents exchanged between you and any third party from October 1, 2021, through the date listed below related to:

   a) any of the Defendants or ABCO, through July 1, 2022;
   b) the Lawsuit, through the date of your response;
   c) any claims or potential claims made by Weather King against the Defendants, through the date of your response;
   d) the Defendants' or your possession of or use of any Weather King property, including but not limited to Weather King's financial information, through the date of your response;
   e) derogatory remarks made by any of the Defendants relating to Weather King, through the date of your response;
   f) potential ownership interest or investment in, funding to, or lending to any of the Defendants, ABCO Rentals, LLC, or any other affiliate of American Barn Co., LLC, through the date of your response;
   g) the formation of ABCO, through July 1, 2022; or
   h) any loans, investments, or capital contributions to ABCO or any of the Defendants.

4. All documents relating to your actual or potential ownership in, investment in, funding to, or lending to any of the Defendants or ABCO through the date of your response.

5. All documents relating to your possession of or use of any Weather King property (including but not limited to financial information), through the date of your response.

6. All documents relating to any of the Defendants' use of any Weather King property (including but not limited to financial information).

---

[1] The definitions and instructions set forth in the subpoena otherwise continue to apply.

7. All phone records or voicemails related to or evidencing calls (whether completed or not) between you and any Defendant from October 1, 2021, through July 1, 2022.

8. All communications and other documents related to any agreements or potential agreements made by you and any of the Defendants or ABCO except for non-advance RTO purchases.

9. All documents and communications related to your decision to do business with ABCO through July 1, 2022.

10. All communications and other documents exchanged between you and any third party not associated with Weather King or any Weather King Affiliate (other than end users/customers of Weather King products) from October 1, 2021, through the date of your response regarding Weather King or any Weather King Affiliate.

Your compliance with the subpoena is required, and we are willing to extend the time for compliance until **September 5, 2023**.

If you are willing to voluntarily comply with the subpoena with some restrictions on the scope of the requests relative to your specific situation with the Defendants, we are happy to work with you on finding a reasonable compromise if compliance can be made soon.

Sincerely,

Butler Snow LLP

# EXHIBIT 6

THE LAW OFFICES
OF
DOUGLAS E. HINES, P.C.

Poplar Street Professional Building
317 East Poplar Street, Suite A
P.O. Box 369
Harrisburg, IL 62946
(618) 253-3233
(618) 252-1103 fax

September 8, 2023

Butler Snow LLP
Attn: John H. Dollarhide
150 3rd Ave. South, Ste. 1600
Nashville, TN 37201

RE: Consolidated Industries, LLC vs. Maupin, et al.
  - Subpoena to Produce Documents
  - JADE Rentals, LLC

Dear Mr. Dollarhide:

On August 28, 2023, JADE Rentals, LLC, received your letter dated August 22, 2023. Due to other pending matters and the long holiday weekend, JADE was not able to respond by September 5, 2023.

In regard to your letter dated August 22, 2023, I will address your initial objections. First, as I am sure you know, a protective order may be requested by either a party to the litigation or by an individual from whom the discovery is sought [citation omitted]. Where, as here, discovery is requested from a third party and the information sought affects a litigant's interests, the litigant may seek a protective order **on behalf of the third party** (emphasis added) [citation omitted]. Since Defendants' timely filed a Motion for Protective Order and a Memorandum of Facts and Law in Support of its Motion for a Protective Order, which specifically named JADE Rentals, LLC, as one of the third parties upon whom a subpoena had been served (see said Memorandum of Facts, "Statement of Facts", Number 23) with the Court on February 16, 2023. I suspect you knew said Motion for a Protective Order stayed enforcement of the Subpoena and that is exactly why you did not follow up on your original subpoena for six (6) months. Accordingly, JADE takes the position that the objections were not waived.

. Now, in regard to your snide remarks in the third paragraph of your letter dated August 22, 2023, if you thought logically, and legally, "present" is not defined and could mean your initial requested date back in February, 2023, "today" or who knows when. Additionally, I do

not know how you practice law in Tennessee, but it is not "impossible" to produce documents after production; and, in some cases, one would be required to produce documents *after* production. It is called supplementing.

Second, I think any simpleton would understand that, since my letter dated August 8, 2023, only specifically addressed Defendant ABCO, I was only addressing JADE's dealings with ABCO. But let me clarify, in my letter dated August 8, 2023, I was only discussing/addressing JADE's dealings with ABCO, I was not discussing, nor did I address, any other Defendants, the supermajority of which I do not even know. If that is not simple enough for you then let me try again. My letter dated August 8, 2023, did not address or discuss Defendant Jesse Maupin. My letter dated August 8, 2023, did not address or discuss Defendant Barry Harrell. My letter dated August 8, 2023, did not address or discuss Defendant Adrian Harrod. My letter dated August 8, 2023, did not address or discuss Defendant Logan Feagin. My letter dated August 8, 2023, did not address or discuss Defendant Stephanie Gillespie. My letter dated August 8, 2023, did not address or discuss Defendant Ryan Brown. My letter dated August 8, 2023, did not address or discuss Defendant Daniel Hershberger. My letter dated August 8, 2023, did not address or discuss Defendant Bryan Lassen. My letter dated August 8, 2023, did not address or discuss Defendant Aleyna Lassen.

Third, my understanding as to whether Weather King fired/terminated the individual defendants is perfectly accurate. Just because the facts, and the admission/statement(s) made to me by one of your clients, does not support your "spin" on this matter does not make my understanding of what your client told me on the afternoon of June 1, 2022, inaccurate. On the early afternoon of June 1, 2022, David Sullivan called me and asked me if "I was involved". During that telephone conversation, which I suspect was one of the first calls that David Sullivan made after the "situation", if not THE first call that David Sullivan made after the "situation", David Sullivan, while still in the "heat of the moment", told me that he had fired all of the Defendants who were involved. That is pretty clear and simple. Not deceptive and illusive like your allegation contained in Paragraph 33 of your First Amended Complaint that, "At that time, Defendants Harrod, Feagin, and Harrell . . . were packing their belongings and leaving the Paris facility." If you are so certain that it was the Defendants who "terminated their own employment with Weather King" and not "Weather King who terminated the Defendants employment", then why didn't you allege in your pleadings that the Defendants quit? Rather, eight (8) paragraphs later, you allege at Paragraph 41 of your First Amended Complaint, that Defendants Maupin and Harrod trespassed ". . . after the termination of **their** employment . . ." (emphasis added) which aligns exactly with what David Sullivan told me on June 1, 2022. So which is it? Did Weather King terminate Defendant Harrod's employment or did Defendant Harrod terminate his own employment?

Hopefully you can now see why JADE will not produce any documents, electronically stored information or objects after June 1, 2022, the day YOUR client chose to "separate" from the Defendants. The day YOUR client's unilateral actions placed JADE's business at tremendous risk of also failing. The day I had to make immediate decisions as to what I had to try and do to save JADE. The day YOUR client fired "the face of the West" and all of the other employees that handled your client's western operations. The day YOUR client does NOT get to

begin a fishing expedition into JADE's subsequent business operations concerning allegations contained in your First Amended Complaint that took place **PRIOR** to June 1, 2022.

To quote from the Honorable Jon A. York's August 29, 2023, Order,

> ". . . the scope of discovery includes any 'nonprivileged matter that is relevant to any party's claim or defense' so long as it is 'proportional to the needs of the case. [citation omitted] The 'operative test' is 'whether the line of interrogation is reasonably calculated to lead to discovery of admissible evidence. [citation omitted] The scope of discovery is limited to 'the claims and the defenses asserted in the pleadings, and . . . parties . . . have no entitlement to discovery to develop new claims or defenses that are not already identified . . . ." [citation omitted]

With that being said, it is JADE's position that the scope of your discovery is limited to matters that are relevant to your clients claims, that is proportional to the needs of the case, that are reasonably calculated to lead to discoverable evidence that is admissible and is limited to the claims asserted in the pleadings. Your First Amended Complaint alleges IX Counts and all IX Counts allege actions that took place **PRIOR** to June 1, 2022. Therefore, I will address the commands made upon JADE to produce documents, electronically stored information or objects based upon those IX Counts that occurred prior to June 1, 2022:

Count I: Misappropriation of Trade Secrets (Federal): No trade secrets have been identified and JADE is not aware of, nor is JADE in possession of, any documents, electronically stored information or objects that JADE would consider trade secrets. From the pleadings it appears that the Plaintiff has tried to make some "trade secret" issue out of the building drawings. First and foremost, JADE does not have, and never has had, any of Weather King's building drawings. Several years ago an affiliated company of JADE, hereinafter referred to as "BCS", contracted with a company to build buildings for BCS. Neither BCS nor JADE provided the company with any drawings, let alone Weather King's drawings. Besides, even if BCS or JADE had any of Weather King's drawings, they would not have been provided to the builder because they would not have been necessary. The builder was a large truss company that makes trusses and such for million dollar homes, hospitals, hotels, assisted living facilities and the like. I do not think, a major truss company would want or need the roof drawings for a 200 square foot "yard barn".

In regard to the floor/pull plate, BCS took 3-4 buildings that were built by several different manufacturing companies to the truss company and set the buildings up on huge (3-4 feet tall) logs so the truss company employees could see under the building to see how the floor (i.e. the pull plate) was assembled. The truss company also had a wall machine that made walls so the truss company did not need, nor likely want, Weather King's drawings in order to figure out how to build a wall.

How to build a building is not a trade secret.  On at least two (2) occasions I have been told by a nephew of John Derksen that he remembered when uncle John went and bought two (2) Cook Portable Buildings and took them back to the farm in Hickory, Kentucky, and they tore them apart and put them back together and tore them apart and put them back together and tore them apart and put them back together until they figured out how to build the buildings (each time the nephew told me the story, he stated that they had to tear the buildings apart three (3) times before they figured out how to build them; in short, the nephew's story has never changed). Additionally, several years ago I asked Greg Cook, the son of John Cook who started Cook Portable Buildings, about this story and he, Greg Cook, told me that the Cook Portable Building dealer in Mayfield, Kentucky, let John Derksen "take" a couple of buildings from the lot so he, John Derksen, could learn how to build them.  I'm sure Mr. Cook did not know how many times Mr. Derkesen had to tear the buildings apart and put them back together before Mr. Derksen figured out how to build them but otherwise the stories were virtually identical.  Additionally, several years ago Scott Berryman, in front of me and my three (3) former partners, IN Scott Berryman's office in Hickory, Kentucky, told us how Graceland Portable Buildings got its start. Mr. Berryman told us that the owner(s) of Graceland came and hired two (2) of his plant employees and had them set up the Graceland plant and then show other Graceland employees how to build buildings.  Mr. Berryman also told us that the two (2) employees talked to him before they left and that he, Mr. Berryman, told them that once Graceland used them for all of their information that Graceland would let them go.  Mr. Berryman said that several months later the two (2) came to him asking for their jobs back because they were no longer employed by Graceland (I don't know if they "quit" or were fired).  In short, JADE does not view any of these building drawings, regardless of the manufacturer, as a trade secret.

During Spring 2019, when I was looking at possibly purchasing Cook Portable Buildings it came to my attention that Cook Portable Buildings had to file all of their drawings with the State of Florida and that the State had to approve the drawings; therefore, since New Mexico, Arizona and Colorado had similar building permitting/approval requirements I figured all of Weather King's drawings, as well as the drawings for every other building company that operated in New Mexico, Arizona and Colorado (as well as Florida), were public record and constituted some bureaucratic minimum state safety standard not a trade secret.  Additionally, JADE also does not consider Weather King's drawings, nor any other building company's drawings, to be a trade secret because building trusses, walls, floors and the like are all mathematical.  Finally, in order to build buildings all one really has to do is buy one of the truss presses from the company in Iowa that makes the truss presses because when you buy the truss press the company gives you the "jigs" to make the trusses.  Yes, it's really that simple; and no, JADE does not have, and never has had, any of Weather King's building drawings.

Count II:  Misappropriation of Trade Secrets (Tennessee):  See Count I.

Count III:  Breach of Duty of Loyalty:  JADE does not believe that it legally owes any duty of loyalty to Weather King.  JADE was a third party independent contractor.  However, with that said, for all of the years that JADE worked with Weather King, JADE did everything it possibly could concerning customers, vendors, the Court systems and the like to shed a good and positive light on Weather King.  NEVER did JADE complain about the way it was treated; that it was given the worst rent to own areas in the entire United States; that Weather King would take

JADE lots away from JADE for the sole purpose and benefit of Weather King's owners, which is completely against all industry custom and practice (you can ask Scott Berryman about that as well). With that said, JADE does not believe it is in possession of any documents, electronically stored information or objects concerning any alleged duty of loyalty.

Count IV: Interference with Business Relationship: JADE is not aware of anything that JADE has done that interfered with Weather King's business. With that said, JADE does not believe it is in possession of any documents, electronically stored information or objects concerning any alleged interference with business relationships.

Count V: Defamation: JADE does not believe it is in possession of any documents, electronically stored information or objects concerning any alleged defamation.

Count VI: Conversion: JADE does not believe it is in possession of any documents, electronically stored information or objects concerning any alleged conversion; alternatively, JADE states that if JADE is in possession of any allegedly converted documents, electronically stored information or objects, said allegedly converted documents, electronically stored information or objects were voluntarily given to JADE by Weather King.

Count VII: Unjust Enrichment: JADE does not believe it is in possession of any documents, electronically stored information or objects concerning any alleged unjust enrichment.

Count VIII: Civil Conspiracy: JADE does not believe it is in possession of any documents, electronically stored information or objects concerning any civil conspiracy.

Count IX: Aiding and Abetting: JADE does not believe it is in possession of any documents, electronically stored information or objects concerning any alleged aiding and abetting.

As I informed you in my letter dated August 8, 2023, on Thursday, November 11, 2021, I was initially diagnosed with throat cancer and a biopsy was taken. On Tuesday, November 16, 2021, the diagnoses was confirmed. Immediately after that I began preparation for treatments (meeting with doctors, CT scans, PET scans, having a port surgically implanted, dental exam, etc.). Because of this and the Thanksgiving holiday, I was in the office very little between November 16, 2021, and the middle of December 2021. After I began treatments in the middle of December 2021, until late May 2022, I was not in the office more than 2-3 times for only 15 to 20 minutes per visit; I was also not in any kind of condition to oversee or manage the operations of JADE Rentals, LLC, and no one else employed at JADE Rentals, LLC, had the authority to conduct any business that would have resulted in any information that you are commanding.

In short, JADE Rentals, LLC, was not involved in and had nothing to do with, any of the allegations you have asserted in the IX Counts contained in your First Amended Complaint nor

does JADE believe that it is in possession of any discoverable documents, electronically stored information or objects that are relevant and/or admissible concerning any of the IX Counts asserted in your First Amended Complaint nor does JADE believe it is in possession of any discoverable documents, electronically stored information or objects that would lead to any discovery of any relevant and/or admissible evidence concerning any of the IX Counts asserted in your First Amended Complaint.

If you would like to discuss this matter in greater detail, please feel free to contact me at your convenience. Thank you.

Respectfully,

Douglas E. Hines

# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| CONSOLIDATED INDUSTRIES, LLC d/b/a WEATHER KING PORTABLE BUILDINGS, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 1:22-cv-01230 |
| v. | ) ) | |
| JESSE A. MAUPIN, BARRY D. HARRELL, ADRIAN S. HARROD, LOGAN C. FEAGIN, STEPHANIE L. GILLESPIE, RYAN E. BROWN, DANIEL J. HERSHBERGER, BRIAN L. LASSEN, ALEYNA LASSEN, and AMERICAN BARN CO., LLC, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**AMERICAN BARN CO., LLC'S FOURTH SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION**

Pursuant to Fed. R. Civ. P. 26, 33, 34, and 36, American Barn Co., LLC by and through its attorneys, states the following Fourth Supplemental responses. Its previous responses are incorporated by reference.

**INTERROGATORIES**

4.     Identify each person or entity who has otherwise invested in or provided financial support to ABCO (other than identified in response to the preceding interrogatories) and, with respect to each such person/entity: (a) set forth the nature, purpose, and amount of the investment/contribution; (b) set forth the dates of each investment/contribution; and (c) identify all documents related to the investment/contribution.

**RESPONSE:**

ABCO objects to this interrogatory as unduly broad, overly burdensome, and not proportional to the needs of the case.  Subject to and without waiving their objections ABCO states that other than the First Bank no other funding discussions were had.  Other parties referenced in produced spreadsheet questioned by counsel have prepaid RTO contracts so that a 5% premium for 5 years is not due.

    5.     Identify each person who has served as an employee of ABCO or an ABCO affiliate and who was previously employed by Weather King and, with respect to each such person: (a) set forth the person's employer and position/title; and (b) set forth the dates in which the person has held the position/title.

**RESPONSE:**

The named Defendants are  the only persons so employed by ABCO and have been since its inception.  Their titles are:

Jesse Maupin – Operations Manager

Barry D. Harrell – Material Purchaser

Adrian S. Harrod – Sales Representative

Logan C. Feagin – Sales Representative

Stephanie L. Gillespie – Sales Representative

Ryan E. Brown – Independent Contractor

Daniel J. Hershberger – Independent Contractor

Brian L. Lassen – Independent Contractor

Aleyna Lassen – Independent Contractor

    6.     Identify each person who was employed by Weather King and who, while still employed by Weather King, was approached about the possibility of forming an employment

relationship or other relationship with ABCO or an ABCO affiliate and, with respect to each such person: (a) set forth the dates in which communications took place about the possibility of forming a relationship with ABCO or an ABCO affiliate; (b) identify all individuals who communicated with that person about the possibility of forming a relationship with ABCO or an ABCO affiliate; (c) identify all witnesses to each communication; (d) identify the location and mode of each communication (*i.e.*, telephonic conversation, email, text message, etc.); and (e) identify all documents relating to each such communication.

**RESPONSE:**

ABCO objects to this interrogatory as unduly broad, overly burdensome, and not proportional to the needs of the case.  Subject to and without waiving its objection ABCO states that the individuals were approached in person by Mr. Maupin, Mr. Feagin, or Mr. Harrod, and that they do not recall who was approached by whom.

10. Identify each person or entity who served as a Weather King dealer and who, while still a Weather King dealer, was approached about the possibility of serving as an ABCO dealer and, with respect to each such person/entity: (a) set forth the dates in which communications took place about the possibility of serving as an ABCO dealer; (b) identify all individuals who communicated with that person/entity about the possibility of serving as an ABCO dealer; (c) identify all witnesses to each communication; (d) identify the location and mode of each communication (*i.e.*, telephonic conversation, email, text message, etc.); and (e) identify all documents relating to each such communication.

**RESPONSE:**

ABCO objects to this interrogatory as unduly broad, overly burdensome, and not proportional to the needs of the case.  In addition to its previous responses, ABCO states that the

individuals were approached by Mr. Maupin, Mr. Feagin or Mr. Harrod and it does not who approached who. There were no witnesses to these approaches.

12.     Identify each rental business (including rent-to-own and consignment) that held a relationship with Weather King and who, while still doing business with Weather King, was approached about the possibility of forming a relationship with ABCO and, with respect to each such entity: (a) set forth the dates in which communications took place about the possibility of forming a relationship with ABCO; (b) identify all individuals who communicated with that entity about the possibility of forming a relationship with ABCO; (c) identify all witnesses to each communication; (d) identify the location and mode of each communication (*i.e.*, telephonic conversation, email, text message, etc.); and (e) identify all documents relating to each such communication.

**RESPONSE:**

BPS Rentals: the meeting with Troy Buttery was in person and would have been around the first part of the month of March 2022.

Jade Rentals: the meeting with Doug Hines was in person and would have been about the first part of May, 2022.

## **REQUESTS FOR PRODUCTION**

34.     All documents reflecting notes, diaries, journals, expense records, day planners, calendars, and/or other record(s) maintained by you that record, refer, or otherwise relate to your activities, including, but not limited to any appointment, meeting, interview, placement, or other business activities in the Portable Buildings Industry from January 1, 2022, through July 1, 2022.

**RESPONSE:**

None exist.  ABCO has never had such documents.

- 4 -

Date: November __, 2023

/s/ Thomas G. Pasternak
Thomas G. Pasternak
AKERMAN LLP
71 South Wacker Drive, 47th Floor
Chicago, IL 60606
Tel. 312.634.5700
thomas.pasternak@akerman.com

*Attorneys for Defendant*
*American Barn Co., LLC*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing American Barn Co., LLC's Fourth Supplemental Responses to Plaintiff's First Interrogatories and Requests for Production was served upon the following counsel via email and U.S. Mail, First-Class, on November __, 2023:

David L. Johnson, #18732
John H. Dollarhide, #40041
Y. Larry Cheng, #36707
BUTLER SNOW LLP
150 3rd Avenue South, Suite 1600
Nashville, TN 37201
Telephone: (615) 651-6700
Fax: (615) 651-6701
david.johnson@butlersnow.com
john.dollarhide@butlersnow.com
larry.cheng@butlersnow.com

Daniel W. Van Horn, #18940
BUTLER SNOW LLP
6075 Poplar Ave., Suite 500
Memphis, TN 38119
Telephone: (901) 680-7200
Fax: (901) 680-7201
Danny.VanHorn@butlersnow.com

*/s/ Thomas G. Pasternak*
Thomas G. Pasternak