IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CONSOLIDATED INDUSTRIES, LLC, d/b/a WEATHER KING PORTABLE BUILDINGS, <br><br> Plaintiff, <br><br> v. <br><br> JESSE A. MAUPIN, BARRY D. HARRELL, ADRIAN S. HAFFORD, LOGAN C. FEAGIN, STEPHANIE L. GILLESPIE, RYAN E. BROWN, DANIEL J. HERSHBERGER, BRIAN L. LASSEN, ALEYNA LASSEN, and AMERICAN BARN CO., LLC, <br><br> Defendants. | Civil Action No. <u>23MC113 SPM</u> <br><br> W.D. Tenn. No. 1:22-cv-01230 |

## NON-PARTY JADE RENTALS, LLC'S, RESPONSE AND OBJECTION TO PLAINTIFF'S MOTION TO COMPEL

Now comes non-party, JADE Rentals, LLC ("JADE"), by and through its Sole Member, Douglas E. Hines, and for its Response and Objection to Plaintiff's Motion to Compel, and states as follows:

1. On December 4, 2023, Plaintiff's Counsel purported to mail Plaintiff's Motion to Compel and Plaintiff's Brief in Support of Plaintiff's Motion to Compel to non-party JADE as follows: Douglas E. Hines, Poplar Street Professional Building, 317 East Poplar Street, Suite A, P.O. Box 369, Harrisburg, IL 62946, (Counsel for JADE Rentals, LLC).

2. Non-party JADE and Douglas E. Hines did not receive Plaintiff's Motion to Compel and Brief in Support of Plaintiff's Motion to Compel until December 11, 2023.

3. Contrary to Plaintiff's Counsel's allegations in Section III and footnote number 4, I, Douglas E. Hines, am not licensed to practice in any Federal Courts, let alone the United States District Court for the Southern District of Illinois nor the United States District Court for the Western District of Tennessee.

4. Plaintiff's Counsel could have easily determined that I, Douglas E. Hines, was not licensed in the United States District Court for the Southern District of Illinois by simply, according to the "Frequently Asked Question Section" of the Southern District's website, calling the main line at Benton, Illinois, or East St. Louis, Illinois. Plaintiff's Counsel could have easily determined that I, Douglas E. Hines, was not licensed in the United States District Court for the Western District of Tennessee by simply, according to the "Frequently Asked Question Section" of the Western District's website, calling the main line at Martin, Tennessee, or Memphis, Tennessee.

5. I, Douglas E. Hines, am licensed to practice law in the State of Illinois, but it is my understanding that being licensed to practice law in the State of Illinois does not automatically allow me to practice law in the United States District Court for the Southern District of Illinois ("where the Motion was filed", Fed. R. Civ. P. 45(f)) nor in the United States District Court for the Western District of Tennessee.

6. Plaintiff's Counsel additionally makes the naked allegation that transfer to the United States District Court for the Western District of Tennessee,

> "would not unfairly prejudice JADE or cause it [presumably JADE] any meaningful inconvenience. JADE would not have to retain Tennessee Counsel. . . . In any event, it is not far to travel

> to Tennessee and, recently, Mr. Hines voluntarily chose to travel to Tennessee to join Defendants as part of the mediation in this case."

7. Plaintiff's Counsel failed to inform the Court, however, that the mediation was on a Tuesday morning following a holiday weekend in Nashville, Tennessee, a "weekend hotspot" where people in Southern Illinois regularly travel for shopping and entertainment; that this matter is filed in the United States District Court for the Western District of Tennessee is in Martin, Tennessee, (I think) wherever that is; that, unless I was wrong about being able to practice in Federal Court, JADE will have to retain Tennessee Counsel; and, that JADE, and in particular me, Douglas E. Hines, would in fact be prejudiced by a transfer to the United States District Court for the Western District of Tennessee because all of my cancer doctors, other medical personnel and caretakers who can testify as to my condition and inability to do anything on behalf of JADE from November 2021, through mid to late May 2022, are located in an area between Mt. Vernon, Illinois, Carterville, Illinois, and Eldorado, Illinois.

8. Following the District Court for the Western District of Tennessee's June 30, 2023, Order denying the Defendant's Motion for a Protective Order to preclude enforcement of over thirty (30) Subpoenas served upon non-parties and, presumably following the thirty (30) day period within which Defendants could have appealed said Order, Plaintiff's Counsel, by letter dated July 31, 2023, commanded that JADE comply with said Subpoena within fourteen (14) days. By letter dated August 8, 2023, (copy attached to Plaintiff's Motion to Compel as Exhibit 4), and by letter dated September 8, 2023 (copy attached to Plaintiff's Motion to Compel as Exhibit 6; copy attached hereto as Exhibit A), I informed Plaintiff's Counsel that,

> "on Thursday, November 11, 2021, I was initially diagnosed with throat cancer and a biopsy was taken. On Tuesday, November 16, 2021, the diagnoses was confirmed. Immediately after that I began preparation for treatments (meeting with doctors, CT scans, PET scans, having a port surgically implanted, dental exam, etc.). Because of this and the Thanksgiving holiday, I was in the office very little between November 16, 2021, and the middle of December 2021. After I began treatments in the middle of December 2021, until late May 2022, I was not in the office more than 2-3 times for only 15 to 20 minutes per visit; I was also not in any kind of condition to oversee or manage the operations of JADE Rentals, LLC, and no one else employed at JADE Rentals, LLC, had the authority to conduct any business that would have resulted in any information that you are commanding."

9. Never did JADE unilaterally "decide that much of what Weather King seeks is irrelevant". The truth is, JADE's letter dated August 8, 2023, advised Plaintiff's Counsel that, JADE understood that, "you seek information beginning October 21, 2021, and JADE Rentals, LLC, is fine with that."; however, JADE objected to the production "of any documents, electronically stored information or objects after June 1, 2022."

10. On June 1, 2022, David Sullivan, one of the owners of Weather King, told me, Douglas E. Hines, during a telephone call that David Sullivan initiated to me, Douglas E. Hines, on June 1, 2022, that he had fired the Defendants.

11. American Barn Company ("ABCO") was registered/formed with the Kentucky Secretary of State on February 23, 2022 (Plaintiff's First Amended Complaint at paragraph 31).

12. Therefore, because of my medical situation, because ABCO was registered/formed February 23, 2022, because David Sullivan fired the Defendants on June 1, 2022, and because none of the Plaintiff's IX Counts contained in its First Amended Complaint had anything to do with JADE after the defendants were fired/quit/were terminated/terminated themselves or "parted ways" on June 1, 2022, JADE objected to any production after June 1, 2022.

13. Plaintiff's Counsel then rejected JADE's offer to produce any documents, electronically stored information or objects between October 21, 2021, and June 1, 2022, in its letter dated August 22, 2023 (See Exhibit 5). Additionally, Plaintiff's Counsel never called me, Douglas E. Hines, to discuss the terms and/or parameters of the subpoena.

14. JADE's email is jaderentals@yahoo.com and I, Douglas E. Hines, do not communicate via email; and, the other employees of JADE have advised me that they did not email anything to any one concerning the allegations contained in Plaintiff's Complaint, as amended; the other employees of JADE have advised me that they did not receive any emails concerning the allegations contained in Plaintiff's Complaint, as amended; and, the other employees of JADE have advised me that they have not communicated with ANYONE by email concerning the allegations contained in Plaintiff's Complaint, as amended.

15. JADE's cell phone number is (505) 870-5807 and I, Douglas E. Hines, was not in possession of the JADE cell phone during the time period covered by the subpoena. The JADE employee who was in possession of the JADE cell phone during the time period covered by the subpoena has advised me that they did not text nor did they receive any text messages on the JADE cell phone concerning any of the allegations contained in the Plaintiff's Complaint, as amended, during the time period covered by the subpoena.

16. The Plaintiff, Consolidated Industries, LLC, d/b/a Weather King Portable Buildings, upon information and belief, is owned, directly or indirectly, by (i.e. its members are) the following: Scott Berryman (who owns Derksen Portable Buildings and various rent-to-own companies), Tommy Hammonds (who owns Prairie Built Barns and various rent-to-own companies), Tim Boyd (who owns 365 Sheds and various rent-to-own companies)

and David Sullivan (who owns a part of Weather King Portable Buildings and various rent-to-own companies).

17. Scott Berryman's son is Brian Berryman who owns all, or a part of, Old Hickory Buildings, LLC, and various rent-to-own companies. Old Hickory Buildings, LLC, also purchased Weather King's western operations that are the subject of this entire lawsuit after Scott Berryman and Defendant Maupin had agreed that Defendant Maupin would buy Weather King's western operations and, in fact, flew out to Weather King's western operations on Scott Berryman's private jet several times in order to inventory buildings and materials.

18. Scott Berryman's daughter and son-in law are Carrie Anne Rodriguez and Marcellus Rodriguez who own all, or a part of, Cumberland Buildings and various rent-to-own companies.

19. ABCO and JADE, and companies affiliated with JADE, operate, or have immediate plans to operate, in Texas, New Mexico, Arizona, California, Nevada, Utah, Colorado, Illinois, Indiana, Kentucky and Missouri.

20. Attached hereto as Exhibit B is a color copy of a map that shows the territorial boundaries for Weather King Portable Buildings (Gray -- Florida), Derkenson Portable Buildings (Red States), Old Hickory Buildings, LLC (Blue States), Prairie Built Barns (Gray -- Indiana and actually all of Illinois) and Cumberland Buildings (Purple States) and, as the Court can see, those companies, along with their affiliated rent-to-own companies, are in direct competition with the Defendants and non-party JADE and JADE's affiliated companies; and, that, upon information and belief, the sole reason Plaintiffs (presumably) are commanding non-party JADE's information after June 1,

2022, concerning non-party JADE's (1) "investment in, or lending to any of the Defendants, ABCO Rentals, LLC, or any other affiliate of American Barn Co., LLC"; (2) ". . . any loans, investments, or capital contributions to ABCO or any of the Defendants"; and (3) ". . . your ownership, or potential ownership, in, investment in, funding to, or lending to any of the Defendants or ABCO", (Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action. Exhibit 1, Exhibit A and Exhibit 5) is so that the Plaintiff's (presumably) and their affiliated companies can monitor the Defendants and non-party JADE's operations.

21. In short, all of Defendants' allegedly wrongful acts occurred on, or before, June 1, 2022, and non-party JADE had absolutely nothing to do with Defendants' allegedly wrongful acts and therefore objects to producing any documents, electronically stored information or objects after June 1, 2022.

22. JADE's September 8, 2023, letter to Plaintiff's Counsel (Exhibit 6; copy attached hereto as Exhibit A), addressed JADE's position, in light of the Honorable Jon A. York's August 29, 2023, Order granting Plaintiff's Motion to Compel Discovery, in which Judge York stated:

> ". . . the scope of discovery includes any 'nonprivileged matter that is relevant to any party's claim or defense' so long as it is 'proportional to the needs of the case. [citation omitted] The "operative test' is 'whether the line of interrogation is reasonably calculated to lead to discovery of admissible evidence. [citation omitted] The scope of discovery is limited to 'the claims and the defenses asserted in the pleadings, and . . . parties . . . have no entitlement to discovery to develop new claims or defenses that are not already identified . . . ." [citation omitted].

23. JADE's September 8, 2023, letter (Exhibit 6; copy attached hereto as Exhibit A) specifically addressed all IX Counts contained in Plaintiff's First Amended Complaint.

In regard to Count I, **Plaintiff** has refused to identify what trade secrets were allegedly stolen or misappropriated and it is not JADE's responsibility when trying to comply with a Subpoena to a non-party to have to guess as to what the Defendants allegedly stole or misappropriated. In regard to the remaining VIII Counts, JADE has very clearly stated that JADE does not believe that it is in possession of any documents, electronically stored information or objects concerning the alleged Counts (See Exhibit A).

24. At Paragraph II (B) of Plaintiff's Brief in Support of Plaintiff's Motion to Compel, Plaintiff tries to walk back its commands by stating that, "Weather King is not interested in documents relating to JADE's run-of-the-mill business dealings with ABCO after June 1, 2022". Well, what constitutes "run-of-the-mill business dealings"? JADE's payment(s) to ABCO for Rental Purchase Contracts entered into after June 1, 2022, the date that the Defendants "parted ways" from the Plaintiff and could no longer enter Plaintiff's place of business or access Plaintiff's business records? In short, JADE does not believe that it has any documents, electronically stored information or objects that fall within the scope of discovery that are relevant to the claims/counts asserted in the Plaintiff's pleadings that JADE is required to produce after June 1, 2022.

25. Pursuant to Fed. R. Civ. P. 45(f), JADE does not consent to the transfer of the Plaintiff's Motion to Compel to the United States District Court for the Western District of Tennessee.

26. Finally, JADE asserts that it does not believe there are any exceptional circumstances that would justify or require a transfer of the Plaintiff's Motion to Compel to the United States District Court for the Western District of Tennessee. JADE is a non-party with its only office located in Harrisburg, Illinois; Plaintiff has served discovery upon, and

received discovery from, the Defendants; Plaintiff's Counsel has indicated that they have sent subpoenas, and received information from, over thirty (30) non-parties; upon information and belief, Plaintiff has just recently began examination and imaging the Defendants cell phones and possibly their computers which will provide Plaintiff's with any information that JADE might have which JADE does not realize that it might have that is not "run-of-the-mill business dealings" information.

WHEREFORE, JADE prays that this Court not transfer Plaintiff's Motion to Compel to the United States District Court for the Western District of Tennessee; that this Court limit the time period for Plaintiff's Subpoena to the period between October 21, 2021, and June 1, 2022; and, for such other and further relief that this Court deems just and reasonable.

Respectfully submitted,

Douglas E. Hines, Sole Member
JADE Rentals, LLC

317 East Poplar St., Suite A
P.O. Box 369
Harrisburg, IL 62946
Phone: (618) 253-3233
Fax: (618) 252-1103

## THE LAW OFFICES
## OF
## DOUGLAS E. HINES, P.C.

Poplar Street Professional Building
317 East Poplar Street, Suite A
P.O. Box 369
Harrisburg, IL 62946
(618) 253-3233
(618) 252-1103 fax

September 8, 2023

Butler Snow LLP
Attn: John H. Dollarhide
150 3rd Ave. South, Ste. 1600
Nashville, TN 37201

RE: Consolidated Industries, LLC vs. Maupin, et al.
- Subpoena to Produce Documents
- JADE Rentals, LLC

Dear Mr. Dollarhide:

  On August 28, 2023, JADE Rentals, LLC, received your letter dated August 22, 2023. Due to other pending matters and the long holiday weekend, JADE was not able to respond by September 5, 2023.

  In regard to your letter dated August 22, 2023, I will address your initial objections. First, as I am sure you know, a protective order may be requested by either a party to the litigation or by an individual from whom the discovery is sought [citation omitted]. Where, as here, discovery is requested from a third party and the information sought affects a litigant's interests, the litigant may seek a protective order **on behalf of the third party** (emphasis added) [citation omitted]. Since Defendants' timely filed a Motion for Protective Order and a Memorandum of Facts and Law in Support of its Motion for a Protective Order, which specifically named JADE Rentals, LLC, as one of the third parties upon whom a subpoena had been served (see said Memorandum of Facts, "Statement of Facts", Number 23) with the Court on February 16, 2023, I suspect you knew said Motion for a Protective Order stayed enforcement of the Subpoena and that is exactly why you did not follow up on your original subpoena for six (6) months. Accordingly, JADE takes the position that the objections were not waived.

  Now, in regard to your snide remarks in the third paragraph of your letter dated August 22, 2023, if you thought logically, and legally, "present" is not defined and could mean your initial requested date back in February, 2023, "today" or who knows when. Additionally, I do


EXHIBIT A

not know how you practice law in Tennessee, but it is not "impossible" to produce documents after production; and, in some cases, one would be required to produce documents *after* production. It is called supplementing.

Second, I think any simpleton would understand that, since my letter dated August 8, 2023, only specifically addressed Defendant ABCO, I was only addressing JADE's dealings with ABCO. But let me clarify, in my letter dated August 8, 2023, I was only discussing/addressing JADE's dealings with ABCO, I was not discussing, nor did I address, any other Defendants, the supermajority of which I do not even know. If that is not simple enough for you then let me try again. My letter dated August 8, 2023, did not address or discuss Defendant Jesse Maupin. My letter dated August 8, 2023, did not address or discuss Defendant Barry Harrell. My letter dated August 8, 2023, did not address or discuss Defendant Adrian Harrod. My letter dated August 8, 2023, did not address or discuss Defendant Logan Feagin. My letter dated August 8, 2023, did not address or discuss Defendant Stephanie Gillespie. My letter dated August 8, 2023, did not address or discuss Defendant Ryan Brown. My letter dated August 8, 2023, did not address or discuss Defendant Daniel Hershberger. My letter dated August 8, 2023, did not address or discuss Defendant Bryan Lassen. My letter dated August 8, 2023, did not address or discuss Defendant Aleyna Lassen.

Third, my understanding as to whether Weather King fired/terminated the individual defendants is perfectly accurate. Just because the facts, and the admission/statement(s) made to me by one of your clients, does not support your "spin" on this matter does not make my understanding of what your client told me on the afternoon of June 1, 2022, inaccurate. On the early afternoon of June 1, 2022, David Sullivan called me and asked me if "I was involved". During that telephone conversation, which I suspect was one of the first calls that David Sullivan made after the "situation", if not THE first call that David Sullivan made after the "situation", David Sullivan, while still in the "heat of the moment", told me that he had fired all of the Defendants who were involved. That is pretty clear and simple. Not deceptive and illusive like your allegation contained in Paragraph 33 of your First Amended Complaint that, "At that time, Defendants Harrod, Feagin, and Harrell . . . were packing their belongings and leaving the Paris facility." If you are so certain that it was the Defendants who "terminated their own employment with Weather King" and not "Weather King who terminated the Defendants employment", then why didn't you allege in your pleadings that the Defendants quit? Rather, eight (8) paragraphs later, you allege at Paragraph 41 of your First Amended Complaint, that Defendants Maupin and Harrod trespassed ". . . after the termination of **their** employment . . ." (emphasis added) which aligns exactly with what David Sullivan told me on June 1, 2022. So which is it? Did Weather King terminate Defendant Harrod's employment or did Defendant Harrod terminate his own employment?

Hopefully you can now see why JADE will not produce any documents, electronically stored information or objects after June 1, 2022, the day YOUR client chose to "separate" from the Defendants. The day YOUR client's unilateral actions placed JADE's business at tremendous risk of also failing. The day I had to make immediate decisions as to what I had to try and do to save JADE. The day YOUR client fired "the face of the West" and all of the other employees that handled your client's western operations. The day YOUR client does NOT get to

begin a fishing expedition into JADE's subsequent business operations concerning allegations contained in your First Amended Complaint that took place **PRIOR** to June 1, 2022.

To quote from the Honorable Jon A. York's August 29, 2023, Order,

> ". . . the scope of discovery includes any 'nonprivileged matter that is relevant to any party's claim or defense' so long as it is 'proportional to the needs of the case. [citation omitted] The "operative test' is 'whether the line of interrogation is reasonably calculated to lead to discovery of admissible evidence. [citation omitted] The scope of discovery is limited to 'the claims and the defenses asserted in the pleadings, and . . . parties . . . have no entitlement to discovery to develop new claims or defenses that are not already identified . . . ." [citation omitted]

With that being said, it is JADE's position that the scope of your discovery is limited to matters that are relevant to your clients claims, that is proportional to the needs of the case, that are reasonably calculated to lead to discoverable evidence that is admissible and is limited to the claims asserted in the pleadings. Your First Amended Complaint alleges IX Counts and all IX Counts allege actions that took place **PRIOR** to June 1, 2022. Therefore, I will address the commands made upon JADE to produce documents, electronically stored information or objects based upon those IX Counts that occurred prior to June 1, 2022:

Count I: Misappropriation of Trade Secrets (Federal): No trade secrets have been identified and JADE is not aware of, nor is JADE in possession of, any documents, electronically stored information or objects that JADE would consider trade secrets. From the pleadings it appears that the Plaintiff has tried to make some "trade secret" issue out of the building drawings. First and foremost, JADE does not have, and never has had, any of Weather King's building drawings. Several years ago an affiliated company of JADE, hereinafter referred to as "BCS", contracted with a company to build buildings for BCS. Neither BCS nor JADE provided the company with any drawings, let alone Weather King's drawings. Besides, even if BCS or JADE had any of Weather King's drawings, they would not have been provided to the builder because they would not have been necessary. The builder was a large truss company that makes trusses and such for million dollar homes, hospitals, hotels, assisted living facilities and the like. I do not think, a major truss company would want or need the roof drawings for a 200 square foot "yard barn".

In regard to the floor/pull plate, BCS took 3-4 buildings that were built by several different manufacturing companies to the truss company and set the buildings up on huge (3-4 feet tall) logs so the truss company employees could see under the building to see how the floor (i.e. the pull plate) was assembled. The truss company also had a wall machine that made walls so the truss company did not need, nor likely want, Weather King's drawings in order to figure out how to build a wall.

How to build a building is not a trade secret. On at least two (2) occasions I have been told by a nephew of John Derksen that he remembered when uncle John went and bought two (2) Cook Portable Buildings and took them back to the farm in Hickory, Kentucky, and they tore them apart and put them back together and tore them apart and put them back together and tore them apart and put them back together until they figured out how to build the buildings (each time the nephew told me the story, he stated that they had to tear the buildings apart three (3) times before they figured out how to build them; in short, the nephew's story has never changed). Additionally, several years ago I asked Greg Cook, the son of John Cook who started Cook Portable Buildings, about this story and he, Greg Cook, told me that the Cook Portable Building dealer in Mayfield, Kentucky, let John Derksen "take" a couple of buildings from the lot so he, John Derksen, could learn how to build them. I'm sure Mr. Cook did not know how many times Mr. Derkesen had to tear the buildings apart and put them back together before Mr. Derksen figured out how to build them but otherwise the stories were virtually identical. Additionally, several years ago Scott Berryman, in front of me and my three (3) former partners, IN Scott Berryman's office in Hickory, Kentucky, told us how Graceland Portable Buildings got its start. Mr. Berryman told us that the owner(s) of Graceland came and hired two (2) of his plant employees and had them set up the Graceland plant and then show other Graceland employees how to build buildings. Mr. Berryman also told us that the two (2) employees talked to him before they left and that he, Mr. Berryman, told them that once Graceland used them for all of their information that Graceland would let them go. Mr. Berryman said that several months later the two (2) came to him asking for their jobs back because they were no longer employed by Graceland (I don't know if they "quit" or were fired). In short, JADE does not view any of these building drawings, regardless of the manufacturer, as a trade secret.

During Spring 2019, when I was looking at possibly purchasing Cook Portable Buildings it came to my attention that Cook Portable Buildings had to file all of their drawings with the State of Florida and that the State had to approve the drawings; therefore, since New Mexico, Arizona and Colorado had similar building permitting/approval requirements I figured all of Weather King's drawings, as well as the drawings for every other building company that operated in New Mexico, Arizona and Colorado (as well as Florida), were public record and constituted some bureaucratic minimum state safety standard not a trade secret. Additionally, JADE also does not consider Weather King's drawings, nor any other building company's drawings, to be a trade secret because building trusses, walls, floors and the like are all mathematical. Finally, in order to build buildings all one really has to do is buy one of the truss presses from the company in Iowa that makes the truss presses because when you buy the truss press the company gives you the "jigs" to make the trusses. Yes, it's really that simple; and no, JADE does not have, and never has had, any of Weather King's building drawings.

Count II: Misappropriation of Trade Secrets (Tennessee): See Count I.

Count III: Breach of Duty of Loyalty: JADE does not believe that it legally owes any duty of loyalty to Weather King. JADE was a third party independent contractor. However, with that said, for all of the years that JADE worked with Weather King, JADE did everything it possibly could concerning customers, vendors, the Court systems and the like to shed a good and positive light on Weather King. NEVER did JADE complain about the way it was treated; that it was given the worst rent to own areas in the entire United States; that Weather King would take

JADE lots away from JADE for the sole purpose and benefit of Weather King's owners, which is completely against all industry custom and practice (you can ask Scott Berryman about that as well). With that said, JADE does not believe it is in possession of any documents, electronically stored information or objects concerning any alleged duty of loyalty.

Count IV: Interference with Business Relationship: JADE is not aware of anything that JADE has done that interfered with Weather King's business. With that said, JADE does not believe it is in possession of any documents, electronically stored information or objects concerning any alleged interference with business relationships.

Count V: Defamation: JADE does not believe it is in possession of any documents, electronically stored information or objects concerning any alleged defamation.

Count VI: Conversion: JADE does not believe it is in possession of any documents, electronically stored information or objects concerning any alleged conversion; alternatively, JADE states that if JADE is in possession of any allegedly converted documents, electronically stored information or objects, said allegedly converted documents, electronically stored information or objects were voluntarily given to JADE by Weather King.

Count VII: Unjust Enrichment: JADE does not believe it is in possession of any documents, electronically stored information or objects concerning any alleged unjust enrichment.

Count VIII: Civil Conspiracy: JADE does not believe it is in possession of any documents, electronically stored information or objects concerning any civil conspiracy.

Count IX: Aiding and Abetting: JADE does not believe it is in possession of any documents, electronically stored information or objects concerning any alleged aiding and abetting.

As I informed you in my letter dated August 8, 2023, on Thursday, November 11, 2021, I was initially diagnosed with throat cancer and a biopsy was taken. On Tuesday, November 16, 2021, the diagnoses was confirmed. Immediately after that I began preparation for treatments (meeting with doctors, CT scans, PET scans, having a port surgically implanted, dental exam, etc.). Because of this and the Thanksgiving holiday, I was in the office very little between November 16, 2021, and the middle of December 2021. After I began treatments in the middle of December 2021, until late May 2022, I was not in the office more than 2-3 times for only 15 to 20 minutes per visit; I was also not in any kind of condition to oversee or manage the operations of JADE Rentals, LLC, and no one else employed at JADE Rentals, LLC, had the authority to conduct any business that would have resulted in any information that you are commanding.

In short, JADE Rentals, LLC, was not involved in and had nothing to do with, any of the allegations you have asserted in the IX Counts contained in your First Amended Complaint nor

does JADE believe that it is in possession of any discoverable documents, electronically stored information or objects that are relevant and/or admissible concerning any of the IX Counts asserted in your First Amended Complaint nor does JADE believe it is in possession of any discoverable documents, electronically stored information or objects that would lead to any discovery of any relevant and/or admissible evidence concerning any of the IX Counts asserted in your First Amended Complaint.

    If you would like to discuss this matter in greater detail, please feel free to contact me at your convenience. Thank you.

Respectfully,

Douglas E. Hines

F:\DOCS\LETTERS\WK vs Maupin - Butler Snow Subpoena 2.doc



**Exhibit B**

## **CERTIFICATE OF SERVICE**

I, Douglas E. Hines, do hereby certify that I served a copy of Non-Party JADE Rentals, LLC's Response and Objection to Plaintiff's Motion to Compel, upon the Attorneys for the parties by depositing a copy of said document in the United States Post Office Box located in Harrisburg, Illinois, postage fully prepaid and addressed to the following on December 21, 2023:

Attorney for Plaintiff:

David L. Johnson
BUTLER SNOW LLP
150 Third Avenue South, Suite 1600
Nashville, TN 37201


Attorney for Defendants:

Thomas G. Pasternak
Taft Stettinius & Hollister, LLP
111 East South Wacker Drive, Suite 2600
Chicago, IL 60601-4208

Douglas E. Hines